Alexander E. Potente (State Bar No. 208240)
Alex.Potente@clydeco.us
Matthew Elmaraghi (State Bar No. 326380)
Matthew.Elmaraghi@clydeco.us
CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone:  (415) 365-9800
Facsimile:    (415) 365-9801

Attorneys for Plaintiff
IRONSHORE SPECIALTY
INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF SAN BERNARDINO, <br><br> Defendant. | Case No. <br><br> **IRONSHORE SPECIALTY INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT; JURY DEMAND** <br><br> **(28 U.S.C. § 2201 and 28 U.S.C § 1332)** |

Plaintiff Ironshore Specialty Insurance Company ("Ironshore") brings this complaint seeking a declaratory judgment against defendant County of San Bernardino (the "County") and, in support thereof, alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for a declaratory judgment in which Ironshore seeks a declaration that it has no duty to indemnify the County for any portion of a $69 million settlement paid to Colonies Partners, L.P. ("Colonies"), Jeffrey Burum, Paul Biane,

1
IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

1  and Mark Kirk (collectively, the "*Colonies II* Plaintiffs"), or to reimburse the County

2  for any defense costs incurred in defending certain lawsuits brought by the *Colonies*

3  *II* Plaintiffs.

4       2.     Those lawsuits (the "*Colonies II* Actions") were as follows:

5            a.  *Burum v. Cnty. of San Bernardino,* C.D. Cal., No. 5:18-cv-

6                00672;

7            b.  *Colonies Partners, LP v. Cnty. of San Bernardino*, C.D. Cal.,

8                No. 5:18-cv-00420;

9            c.  *Erwin v. Cnty. of San Bernardino*, C.D. Cal., No. 5:18-cv-

10               01216;

11           d.  *Kirk v. Cnty. of San Bernardino*, C.D. Cal., No. 5:18-cv-01597;

12           e.  *Biane v. Cnty. of San Bernardino*, C.D. Cal., No. 5:18-cv-

13               02202; and

14           f.  *DeFazio v. Cnty. of San Bernardino*, C.D. Cal.  No. 5:18-cv-

15               00554.

16      3.     In the *Colonies II* Actions, the *Colonies II* Plaintiffs alleged that the

17  County, San Bernardino County District Attorney Michael Ramos, Assistant District

18  Attorney James Hackleman, and District Attorney's Office Investigators Hollis

19  Randles and Robert Schreiber (collectively the "*Colonies II* Defendants"), among

20  others, engaged in a conspiracy to retaliate against the *Colonies II* Plaintiffs as part of

21  a decades-long dispute over land and water rights in Upland, California, culminating

22  in a malicious prosecution of Burum, Biane, Kirk, and other agents of Colonies,

23  resulting in multiple violations of 42 U.S.C. § 1983 ("§ 1983").

24      4.     As detailed more fully in the *Colonies II* Plaintiffs' respective amended

25  complaints, the *Colonies II* Plaintiffs alleged, *inter alia*, that the *Colonies II*

26  Defendants (1) retaliated against the *Colonies II* Plaintiffs in violation of § 1983;

27  (2) maliciously prosecuted the *Colonies II* Plaintiffs; (3) engaged in a conspiracy

28  against the *Colonies II* Plaintiffs in violation of § 1983; (4) fabricated evidence against

*CLYDE & CO US LLP*
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

2                                              Case No.

the *Colonies II* Plaintiffs in violation of § 1983; (5) were liable under a *Monell v. Dept. of Social Servs.* theory of liability under § 1983; and (6) were liable to the *Colonies II* Plaintiffs under § 1983 supervisory liability.

5.    Following the denial of significant portions of the *Colonies II* Defendants' motions for summary judgment in the *Colonies II* Actions, in October of 2020, the *Colonies II* Defendants settled the *Colonies II* Actions for $69 million, paid by the County (the "*Colonies II* Settlement").

6.    The *Colonies II* Settlement was entered into without the consent of Ironshore.

7.    Ironshore issued commercial excess insurance policy no. 000541500 to the County for the policy period July 1, 2010 to July 1, 2011 (the "Ironshore Policy"). A true and correct copy of this policy is attached hereto as Exhibit A.

8.    Because the only remaining claims against the *Colonies II* Plaintiffs following summary judgment were for willful acts in violation of § 1983, coverage for the *Colonies II* Settlement is barred by California Insurance Code § 533, which prohibits insurance coverage for willful acts of the insured.

9.    Additionally, as detailed below, because the County breached other provisions of the Ironshore Policy, and because other terms and exclusions of the Ironshore Policy and underlying insurance policies apply, the County cannot establish that there is coverage for this matter, as such terms and exclusions preclude any possibility of coverage for the *Colonies II* Settlement.

10.    For these reasons and those detailed more fully below, Ironshore has no duty to indemnify the County for the *Colonies II* Settlement or reimburse it for any defense costs it incurred in the *Colonies II* Actions.

## **PARTIES**

11.    Plaintiff Ironshore is a corporation organized and existing under the laws of Arizona, with its principal place of business in Massachusetts.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

12.    Defendant County of San Bernardino is a public entity in California, with its county seat located in the city of San Bernardino, California.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1), because there is complete diversity between plaintiff Ironshore and defendant County, and as the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.    This Court also has original jurisdiction by virtue of the Declaratory Judgments Act, 28 U.S.C. § 2201(a), because this matter presents a case of actual controversy.  This matter presents a case of actual controversy because the County has demanded Ironshore, upon the exhaustion of underlying insurance, indemnify the County and reimburse its defense costs under the Ironshore Policy in connection with the $69 million *Colonies II* Settlement, and Ironshore disputes that it owes the County any duty to indemnify for the *Colonies II* Settlement or to reimburse its defense costs.

15.    Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1) and (2) because the only defendant resides in the State of California, the only defendant resides in this judicial district, and a substantial part of the events giving rise to the claim occurred in this judicial district.

16.    This action is filed in the Eastern Division of the United States District Court for the Central District of California in compliance with Central District of California General Order 349.

## FACTUAL ALLEGATIONS

### A.    The Applicable Insurance Policies

17.    The Ironshore Policy is commercial excess insurance policy no. 000541500 issued by Ironshore to the County as named insured, subject to all of its terms.

18.    The Ironshore Policy has an effective period of July 1, 2010 to July 1, 2011.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

19.    The Ironshore Policy provides certain coverage excess of a $52.5 million retention per occurrence, per claim, or per loss and in the aggregate where applicable.

20.    The Ironshore Policy is subject to applicable limits of $10 million per occurrence, per claim, or per loss and in the aggregate where applicable.

21.    The Ironshore Policy's Insuring Agreement provides in part as follows:

**I.    COVERAGE**

> **A.** This Policy shall provide the Insured with Commercial Excess Liability Insurance coverage in accordance with the same warranties, terms, conditions, exclusions and limitations as are contained, on the Inception Date of this Policy, in the **Controlling Underlying Policy**, subject to the premium, limits of liability, retention, policy period, warranties, exclusions, limitations and any other terms and conditions of this Policy, including any and all endorsements attached hereto, inconsistent with or supplementary to the **Controlling Underlying Policy**.

*    *    *

*See* Exhibit A, p. 13.

22.    The Ironshore Policy is a fourth-layer excess policy, meaning there are four underlying policies below the Ironshore Policy in the coverage tower.

23.    The "Controlling Underlying Policy" identified in the Ironshore Policy is an immediately underlying policy issued by Great American Insurance Company of New York.

24.    The three immediately underlying policies below the Ironshore Policy provide coverage in accordance with the coverages of their respective underlying policy, subject to applicable limits, retentions, policy periods, warranties, exclusions, limitations, terms, and conditions.

25.    The three immediately underlying policies below the Ironshore Policy ultimately provide coverage in accordance with the coverages of policy no.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

Case No.

IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

71P2000037-101, issued to the County by Everest National Insurance Company (the "Everest Policy"), subject to applicable limits, retentions, policy periods, warranties, exclusions, limitations, terms, and conditions.  A true and correct copy of the Everest Policy is attached hereto as Exhibit B.

26.     The insuring agreement of the Everest Policy provides, in part, as follows:

**SECTION I.  COVERAGES**

**A.  INSURING AGREEMENTS**

\* \* \*

**2.  ERRORS AND OMISSIONS LIABILITY**

> We will pay on behalf of the insured, the "ultimate net loss", in excess of the "retained limit", that the insured becomes legally obligated to pay to compensate others for loss arising out of your "wrongful act" to which this insurance applies and takes place in the "coverage territory" during the Policy Period.

\* \* \*

*See* Exhibit B, p. 5.

27.     The Everest Policy defines "ultimate net loss" as "the total sum, after reduction for recoveries or salvages collectible, actually paid or payable due to a 'claim' or 'suit' for which you are liable either by a settlement to which we agreed or a final judgment, and shall include defense costs."

28.     The Everest Policy definitions section defines "wrongful act" in part as follows:

> Any actual or alleged error or misstatement, omission, negligent act, or breach of duty including misfeasance, malfeasance, and nonfeasance by you, including, but not limited to, those constituted by:

\* \* \*

**2.**     Any negligent ministerial act;

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

* * *

"Wrongful act" also means any "personal injury offense" or

"advertising injury offense."

*See* Exhibit B, p. 23.

29.     "Personal injury offense" is defined by the Everest Policy in part as

follows:

> **Z.**     "Personal injury offense" means any act, error, or omission
>
>       constituted by or arising out of one or more of the following:
>
>                                     * * *
>
>       2.     Malicious prosecution;
>
>                                     * * *

*See* Exhibit B, p. 20.

30.     The "Exclusions" section of the Everest Policy contains the following

exclusions, among others:

> This insurance does not apply to a "claim" or "suit" against you for:
>
>                                     * * *
>
> **15**.     Any liability arising out of criminal, fraudulent, dishonest or
>
>       malicious acts or omissions committed by or at the direction of
>
>       the insured.
>
>                                     * * *
>
> This exclusion does not apply to liability arising from the
>
> managerial, advisory, supervisory, or controlling obligations of
>
> any insured over the actions of another insured.
>
> **16**.     Any liability arising out of your "wrongful act" for gain, profit,
>
>       or advantage to which you are not legally entitled.
>
>                                     * * *

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

This exclusion does not apply to liability arising from the managerial, advisory, supervisory, or controlling obligations of any insured over the actions of another insured.

*See* Exhibit B, p. 10.

31.   The Ironshore Policy contains a "Retention" section which provides as follows:

**A.** The Limits of Liability stated in Item 3 of the Declarations of this Policy apply in excess of:

1.   The total of the limits of liability of the **Underlying Policies** applicable on a per occurrence, per claim, or per loss basis, but in no event in an amount less than the total of the per occurrence, per claim or per loss limits of liability of the **Underlying Policies** stated in Item 4 of the Declarations of this Policy.

2.   The total of the limits of liability of the **Underlying Policies** applicable on an aggregate basis, where an b [sic] amount is shown in the aggregate limit of liability of the **Underlying Policies** stated in Item 4 of the declarations of this Policy, but in no event in an amount less than the aggregate limits of liability of the **Underlying Policies** stated in Item 4 of the Declarations of this Policy.

*See* Exhibit A, p. 13.

32.   The Everest Policy contains the following condition:

**3.   Duties in The Event of an "Occurrence", "Wrongful Act", "Employment Practice Liability Wrongful Act", "Employee Benefit Wrongful Act" or "Claim" or `Suit"**

**a.**   You must see to it that we are notified as soon as practicable of an "occurrence", "wrongful act", "employment practice liability wrongful act", or

"employee benefit wrongful act", regardless of the amount, which may result in a "claim". . . .

**b.**   If a "claim" is made or "suit" is brought against any insured, you must:

**(1)**   Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)**   Notify us as soon as practicable.

*See* Exhibit B, p. 14.

33.   The Everest Policy also contains a "no action" clause which provides that it may only be sued for an "agreed settlement," meaning a "settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative."

34.   The Everest Policy defines "ultimate net loss" in relevant part as liability "either by a settlement to which we agreed or a final judgment[.]"

35.   There is no provision of the Everest Policy that provides coverage for settlements entered into by the County to which Everest or any other insurer did not agree.

36.   The Everest Policy confers a right on Everest to defend suits against the County.

37.   The Ironshore Policy also requires the insured to provide notice to Ironshore of any claim or suit, as follows:

a.   The Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice as soon as practicable to the Insurer of any occurrence, offense, claim or suit likely to involve this policy.

*See* Exhibit A, p. 17.

38.   The Ironshore Policy also contains the following provision regarding the insured's assistance and cooperation obligations:

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

Case No.

IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

**C.     ASSISTANCE AND COOPERATION**

*          *          *

> 2.      The Insured shall not, except at its own expense, settle any claim or suit or incur any defense costs for any amount to which this Policy applies without the Insurer's written consent.

*See* Exhibit A, p. 14.

39.     The Everest Policy contains the following arbitration provision:

**SECTION IV. GENERAL CONDITIONS**

*          *          *

**11. Arbitration**

Any dispute arising from or relating to this Policy shall be submitted to arbitration. Either party may commence arbitration by making a written demand to the other. When this demand is made, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within thirty (30) days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

1. Pay the expenses it incurs, including the expenses of the arbitrator it appoints; and

2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will be in the county or parish in which the address shown in the Declarations is located, and the panel will be relieved of any strict rules of procedure. A decision agreed to by two of the arbitrators will be binding and final.

*See* Exhibit B, p. 17.

IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

40.     The Ironshore Policy provides that disputes under the Ironshore Policy shall be submitted to a "Court of competent jurisdiction within the United States," as follows:

> **VI. CONDITIONS**
>
> **A. CONSENT TO JURISDICTION**
>
> 1. The Insurer, at the request of the Insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of the Insurer's right to commence an action in any Court of competent jurisdiction of the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the party named in Item 7 of the Declarations of this Policy, and that in any suit instituted against the Insurer to effectuate arbitration or to enforce any award entered in such arbitration, the Insurer will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

*See* Exhibit A, p. 16.

**B.     The *Colonies II* Actions**

> i.     *Colonies I* Lawsuit, Settlement, and Political Donations

41.     The allegations in the *Colonies II* Actions originated out of a dispute dating back to 1997 between the County, on one hand, and Colonies, its partners, and agents, on the other.  *See* First Amended Complaint, at ¶ 29, *Colonies Partners, L.P. v. County of San Bernardino*, No. 18-00420 (C.D. Cal. July 25, 2018), ECF No. 64, 2018 WL 8300102.

IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

42.  In 1997, Colonies purchased 434 acres of land in Upland, California for development.  *See id.*

43.  As part of the construction of the Highway 210 extension through Colonies' parcel of land, it allegedly became necessary to designate an area for water runoff from that project and the related 20th Street Storm Drain through the creation of a flood control basin.  *See id.*

44.  Colonies alleged that San Bernardino County Flood Control District executive director Ken Miller attempted to trick Colonies into building the flood control basin on Colonies' land, at its own expense, without paying for the land.  *See id.* at ¶ 30.

45.  Colonies claimed that, in response to Miller's overture, Colonies offered to turn over the necessary acreage to the County to allow the County to build the flood control basin itself.  *See id.*

46.  Colonies alleged that the County refused, insisting that easements dating from the 1930s entitled the County to redirect flood waters onto Colonies' property, up to 80 million gallons of water per hour.  *See id.* at ¶¶ 30-31.

47.  Colonies also alleged that the County also argued that it had received consent to direct this water onto Colonies' property from Colonies.  *See id.* at ¶ 31.

48.  In response to this dispute, Colonies filed a quiet title action in San Bernardino County Superior Court ("*Colonies I*").  *See id.* at ¶ 32.

49.  After seven years of litigation, including appeals, the San Bernardino County Superior Court issued a statement of intended decision in favor of Colonies in the quiet title action.  *See id.* at ¶ 34.

50.  According to Colonies, this decision would have paved the way for Colonies to recover over $300 million from San Bernardino County in a subsequent inverse condemnation action.  *See id.* at ¶ 35.

51.  Also according to Colonies, despite four of five County supervisors voting in favor of settling the quiet title action, County attorneys and officials

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

1    continued to actively oppose a settlement through various actions, including through

2    inserting "poison pills" into proposed settlement agreements.  *See id.* at ¶ 36.

3        52.    In response to this opposition, Colonies began a public pressure strategy

4    to try to effectuate a settlement.  *See id.* at ¶¶ 38-39.

5        53.    Specifically, Colonies retained a former state senator and a media

6    consultant to publicly criticize County officials' handling of the dispute.  *See id.* at ¶

7    39.

8        54.    Ultimately, on November 28, 2006, County supervisors voted 3-2 to

9    settle *Colonies I* for $102 million in exchange for Colonies agreeing to release its

10   damages claims and transferring the disputed land to the County for flood control

11   purposes.  *See id.* at ¶ 43.

12       55.    Following the settlement, Colonies made political donations to political

13   action committees associated with County supervisors and others who had supported

14   the settlement and who, according to Colonies, would advance other pro-development

15   policies.  *See id.* at ¶ 44.

16            ii.    Prosecution of *Colonies II* Plaintiffs and Taxpayer Action

17       56.    According to Colonies, in response to the *Colonies I* settlement, the San

18   Bernardino County District Attorney's Office and California Attorney General's

19   Office opened a public integrity investigation into Colonies with respect to the

20   settlement of *Colonies I* and the associated political contributions made by Colonies.

21   *See id.* at ¶ 45.

22       57.    The *Colonies II* Plaintiffs claimed that this prosecution was a "vendetta"

23   initiated in response to Colonies' and Burum's public criticism of the County and

24   County officials with respect to the handling of *Colonies I.  See id.* at ¶ 51.

25       58.    The *Colonies II* Plaintiffs alleged facts relating to a conspiracy against

26   Colonies dating back to as early as 2005, when the public leak of a key confidential

27   memorandum caused *Colonies I* settlement negotiations to cease.  *See id.* at ¶ 46.

28

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

59.     The *Colonies II* Plaintiffs alleged an escalation of a "vendetta" began in 2008, when the San Bernardino County District Attorney's Office enlisted County Assistant Assessor Adam Aleman as a prosecution witness. *See id.* at ¶¶ 51-54.

60.     The San Bernardino County District Attorney's Office was allegedly aware that Aleman had been caught secretly recording a County supervisor related to *Colonies I*, but sought to cover this fact up, and concoct a justification for the recording. *See id.*

61.     According to Colonies, Aleman also had been caught misleading a grand jury, leading to felony charges of changing subpoenaed documents. *See id.* at ¶ 52.

62.     Following ongoing investigative efforts, in 2009, the San Bernardino County District Attorney and State Attorney General's office announced the convening of an "investigative" grand jury with respect to the *Colonies I* settlement. *See id.* at ¶¶ 58-59.

63.     The *Colonies II* Plaintiffs alleged that this announcement was directly made in response to Colonies partner Jeffrey Burum's active role with respect to the *Colonies I* lawsuit and in Republican Party politics, as well as to deflect attention from a separate investigation into the San Bernardino County District Attorney Michael Ramos's improper relationships with subordinates. *See id.* at ¶¶ 57-59.

64.     The *Colonies II* Plaintiffs alleged this investigation was retaliatory for multiple reasons relating to their litigation successes and support for County political opponents. *See id.* at ¶ 62.

65.     In February 2010, the San Bernardino County District Attorney's Office filed criminal complaints against several individuals, including the former Chairman of the County Board of Supervisors, Colonies' lobbyist, and the founder of a political action committee that received a $100,000 donation from Colonies. *See Colonies Partners LP v. County of San Bernardino*, 2020 WL 5102160, at *9 (C.D. Cal. July 28, 2020).

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

Case No.
IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

66.    In May 2011, the County District Attorney's office obtained a grand jury indictment against Colonies partner Jeffrey Burum, Colonies lobbyist James Erwin, County Supervisor Paul Biane, and Mark Kirk, Chief of Staff for another county supervisor. *See id.* at *10.

67.    According to Colonies, the indictment alleged these individuals conspired to settle *Colonies I* on terms favorable to Colonies in exchange for political contributions. *See* Second Amended Complaint, at ¶¶ 107, 125, *Burum v. County of San Bernardino*, No. 18-00672 (C.D. Cal. July 25, 2018).

68.    In February of 2012, two private taxpayer groups filed a civil lawsuit against Colonies seeking to invalidate the *Colonies I* settlement under Government Code §1090. *See* First Amended Complaint, at ¶ 118, *Colonies Partners, L.P. v. County of San Bernardino*, No. 18-00420 (C.D. Cal. July 25, 2018), ECF No. 64, 2018 WL 8300102.

69.    This taxpayer action was dismissed in 2016. *See id.* at ¶ 126.

70.    Colonies demanded that the County defend and indemnify it pursuant to the terms of the *Colonies I* Settlement, but the County refused to do so. *See id.* at ¶ 118.

71.    On October 23, 2017, Colonies demanded that the County indemnify it for legal fees and costs incurred in the taxpayer groups lawsuit in an amount in excess of $32 million. *See id.* at ¶ 131.

72.    On August 28, 2017, Jeffrey Burum was acquitted in the criminal action following a trial. The remaining charges against the remaining defendants were dropped. *See id.* at ¶¶ 5, 47. Nevertheless, the County District Attorney continued to attempt to pursue an investigation of Burum even after his acquittal. *See Colonies Partners, LP v. County of San Bernardino*, 2020 WL 5102160, at *35 (July 28, 2020).

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

iii.    *Colonies II* Wrongful Prosecution Lawsuits

73.    As listed in Paragraph 2 above, in 2018, Colonies, Burum, and four other individuals sued San Bernardino County in the United States District Court for the Central District of California.

74.    Those complaints brought claims against the County for First Amendment retaliation under 42 U.S.C. § 1983 ("§ 1983"), malicious prosecution under § 1983, and other related claims under § 1983.

75.    In those complaints, the *Colonies II* Plaintiffs also brought causes of action for breach of contract, negligence, and intentional infliction of emotional distress.

76.    As part of the claims in those complaints, the *Colonies II* Plaintiffs alleged that the defendants initiated fraudulent and illegitimate criminal investigations into Colonies and its management, publicly threatened to use the criminal process to take back the $102 million *Colonies I* settlement, and manipulated and fabricated false evidence against the plaintiffs.

77.    In those complaints, the *Colonies II* Plaintiffs alleged that the investigations were retaliatory with the preordained goal of convicting the plaintiffs, in retaliation for exercising their First Amendment rights and for obtaining a favorable settlement against the County.

78.    In those complaints, the *Colonies II* Plaintiffs sought damages in the form of lost income, lost business opportunities, loss of reputation, litigation expenses, attorneys' fees, exemplary and punitive damages.

v.    Partial Summary Judgment, Settlement of *Colonies II*, Tender to Ironshore, and Arbitration Demand

79.    On July 28, 2020, the *Colonies II* court issued an order and opinion in part granting in part and denying in part San Bernardino County's motion for

1  summary judgment.  *See Colonies Partners, LP v. County of San Bernardino*, 2020

2  WL 5102160 (July 28, 2020).

3      80.    As part of this opinion, the court cited to multiple examples of retaliatory

4  motives on the part of the County and evidence of fabrication of evidence, declining

5  to dismiss § 1983 claims against the County, its district attorneys, and investigators.

6  *See, e.g., id.* at *12.

7      81.    The court granted the defendants' motion for summary judgment with

8  respect to the plaintiffs' negligence and intentional infliction of emotional distress

9  claims, and with respect to Colonies' breach of contract claims.  *See id.* at *15.

10     82.    The court also granted summary judgment against two plaintiffs, James

11  Erwin and John DeFazio, with respect to all their claims.  *See id.* at *14.

12     83.    Following various complaint amendments, and after dismissal of certain

13  claims by the court, the following claims brought by Colonies, Burum, Kirk, and

14  Biane remained: (1) retaliation under § 1983 against District Attorney Ramos and

15  Assistant District Attorney Hackleman; (2) *Monell* municipal liability under § 1983

16  against San Bernardino County; (3) supervisory liability under § 1983 against Ramos

17  and Hackleman; (4) malicious prosecution against Ramos and Hackleman under §

18  1983; (5) conspiracy under § 1983 against Ramos and Hackleman; and (6) fabrication

19  of evidence under § 1983 against Hollis Bud Randles and Robert Schreiber, San

20  Bernardino County Public Integrity Unit investigators.  *See generally id.*

21     84.    The surviving claims brought by Colonies itself were claims for

22  retaliation, *Monell* municipal liability, supervisory liability, and conspiracy.  *See id.*

23     85.    The County defended these claims with counsel that it appointed.

24     86.    The County did not actually notify Ironshore of the *Colonies II* Actions

25  until June of 2022.

26     87.    The County first attempted to tender the *Colonies II* Actions to Ironshore

27  over two years after the *Colonies II* Actions were first filed and served upon the

28  County.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

88.　On September 29, 2020, and October 1, 2020, the County engaged in a two-day mediation.

89.　The County settled the *Colonies II* lawsuit for a total of $69,000,000 (the "*Colonies II* Settlement").

90.　The County paid for the *Colonies II* Settlement with its own funds.

91.　This mediation occurred less than two months after the County first attempted to provide notice to Ironshore.

92.　Ironshore never received notice of the mediation before it occurred.

93.　Ironshore did not have an opportunity to participate in the mediation because of its lack of notice.

94.　The County did not seek Ironshore's written consent before entering into the *Colonies II* Settlement.

95.　The County did not receive the written consent of Ironshore before entering into this settlement.

　　　　vi.　Arbitration Demand

96.　On June 17, 2022, the County for the first time properly tendered this matter to Ironshore at "usclaims@ironshore.com."

97.　Less than a month thereafter, on July 15, 2022, the County demanded that Ironshore participate in an arbitration regarding the *Colonies II* Settlement.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment – No Duty to Indemnify)**

98.　Ironshore incorporates by reference the allegations of paragraphs 1 through 97 as though the same were set forth herein.

99.　Pursuant to the DECLARATORY JUDGMENTS ACT, 28 U.S.C. § 2201, Ironshore is entitled to a judicial determination concerning the parties' rights and obligations, if any, under the Ironshore Policy in connection with the *Colonies II* Actions.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

100.   Ironshore has no duty under the Ironshore Policy to indemnify the County for the *Colonies II* settlement.

101.   The *Colonies II* Actions and resulting *Colonies II* Settlement all arose out of the willful or intentional acts of the County, its district attorneys, or investigators.

102.   The *Colonies II* Settlement did not resolve any claims for negligent conduct, as such claims had been dismissed by the *Colonies II* court on summary judgment.

103.   California Insurance Code § 533 prohibits coverage for willful conduct as a matter of law.

104.   Therefore, there can be no coverage for the *Colonies II* Settlement as a matter of law.

105.   Alternatively, there is no coverage for the *Colonies II* Settlement under the Ironshore Policy because coverage is excluded by one or more of the Everest Policy's exclusions, including the following:

- SECTION I. COVERAGES, D. EXCLUSIONS, 15.  Liability arising out of criminal, fraudulent, dishonest or malicious acts or omissions.

- SECTION I. COVERAGES, D. EXCLUSIONS, 16.  Liability arising out of your "wrongful act" for gain, profit, or advantage to which you are not legally entitled.

106.   Alternatively, there is no coverage available or limited under the Ironshore Policy because the County has failed to satisfy all applicable retentions and exhaust available underlying insurance.

107.   Additionally, Ironshore is not obligated to indemnify the County for those portions of the settlement attributable to actions that did not trigger the Ironshore Policy.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

108.   In defending the *Colonies II* Actions and entering into the *Colonies II* Settlement, the County was in breach of the notice, cooperation, and consent to settlement provisions of the Ironshore Policy.

109.   Ironshore has complied with all of its obligations under the Ironshore Policy.

110.   Accordingly, Ironshore is entitled to a declaration that it has no duty under the Ironshore Policy to indemnify the County for the *Colonies II* Settlement.

## **SECOND CLAIM FOR RELIEF**

### **(Declaratory Relief – No Obligation to Reimburse Defense Costs)**

111.   Ironshore incorporates by reference the allegations of paragraphs 1 through 110 as though the same were set forth herein.

112.   The Ironshore Policy and underlying policies only have a duty to defend for claims where coverage is available those policies, subject to all of their terms.

113.   Furthermore, any duty to defend under the Ironshore Policy is only triggered upon notice of a claim being provided to the insurers, including Ironshore.

114.   Ironshore had no duty to defend the *Colonies II* Actions because the County failed to provide notice of those lawsuits before the *Colonies II* Settlement was reached, abrogating the duty to defend.

115.   Because coverage is not available under the Ironshore Policy, Ironshore had no duty to defend the County for the *Colonies II* Actions.

116.   Ironshore also can have no duty to defend until all underlying coverage is exhausted.

117.   Because Ironshore had no obligation to defend the County for the *Colonies II* Actions, it also has no obligation to reimburse the County for defense costs it incurred in the *Colonies II* Actions.

118.   Accordingly, Ironshore is entitled to a declaration that it has no duty under the Ironshore Policy to reimburse the County for any defense costs it incurred in defending the *Colonies II* Actions.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

Case No.

IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

**THIRD CLAIM FOR RELIEF**

**(Declaratory Relief – No Arbitration Obligation)**

119.   Ironshore incorporates by reference the allegations of paragraphs 1 through 118 as though the same were set forth herein.

120.   There is no arbitration provision in the Ironshore Policy.

121.   The Ironshore Policy provides that Ironshore will submit to a court of competent to jurisdiction in the United States for resolution of disputes arising under the Ironshore Policy.

122.   The Ironshore Policy provides that it retains the right to commence an action in any court of competent jurisdiction in the United States.

123.   Accordingly, Ironshore is entitled to a declaration that it has no obligation to submit any dispute with the County to arbitration.

**PRAYER FOR RELIEF**

WHEREFORE, Ironshore Specialty Insurance Company respectfully requests the Court to enter an order:

1.   Declaring that, under the Ironshore Policy, Ironshore has no duty to indemnify the County for the *Colonies II* Settlement or reimburse the County for defense costs incurred in defending the *Colonies II* Actions;

2.   Declaring that Ironshore has no obligation to arbitrate its disputes with the County under the Ironshore Policy; and

3.   Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Ironshore may be entitled and which this Court deems just and proper.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT

1  Dated: August 29, 2022                    **CLYDE & CO US LLP**

2

3                                            By: _____

4                                                Alexander E. Potente

5                                                Matthew Elmaraghi
                                                 Attorneys for Plaintiff
6                                                IRONSHORE SPECIALTY
                                                 INSURANCE COMPANY
7

8                          **<u>DEMAND FOR TRIAL BY JURY</u>**

9              PLEASE TAKE NOTICE that Ironshore Specialty Insurance Company

10  hereby demands a trial by jury as to all issues so triable.

11  Dated:  August 29, 2022                   **CLYDE & CO US LLP**

12

13                                            By: _____

14                                                Alexander E. Potente
                                                  Matthew Elmaraghi
15                                                Attorneys for Plaintiff
                                                  IRONSHORE SPECIALTY
16                                                INSURANCE COMPANY

17

18

19

20

21

22

23

24

25

26

27

28

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

                                   22                          Case No.
IRONSHORE SPECIALTY INS. CO.'S COMPLAINT FOR DECLARATORY JUDGMENT