# Exhibit A



**IRONSHORE SPECIALTY INSURANCE COMPANY**

One State Street Plaza
7th Floor
New York, NY 10004
Toll Free: (877) IRON411

**NOTICE:**

**1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED 'NONADMITTED' OR 'SURPLUS LINE' INSURERS.**

**2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT WHICH APPLIES TO CALIFORNIA LICENSED INSURERS.**

**3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

**4. CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.**

**5. FOR ADDITIONAL INFORMATION ABOUT THE INSURER, YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER OR 'SURPLUS LINE' BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE, AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 800-927-HELP.**

**6. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.**



### IRONSHORE SPECIALTY INSURANCE COMPANY
One State Street Plaza
7th Floor
New York, NY 10004
Toll Free: (877) IRON411

## COMMERCIAL EXCESS LIABILITY POLICY DECLARATIONS

**Policy Number:** 000541500    **NEW/RENEWAL OF:** NEW

**Item 1.** **Named Insured & Mailing Address:** County of San Bernardino
222 W. Hospitality Lane
San Bernardino, CA  92410

**Item 2.** **Policy Period:** **Effective:** July 01, 2010    **Expiration:** July 01, 2011
12:01 a.m. time at your mailing address shown above

**Item 3:** **Limits Of Liability**

a. **Per Occurrence, Per Claim or Per Loss** (as in Controlling underlying Policy)    $10,000,000

b. **Aggregate**, where applicable    $10,000,000

(Per Schedule of Underlying Policies (See Endorsement No. 1)

**Item 4.** **Limits Of Underlying Policy**

a. Per Occurrence, Per Claim or Per Loss    $52,500,000

b. Aggregate, where applicable    $52,500,000

Per Schedule of Underlying Policies (See Endorsement No. 1)

**Item 5.** **Controlling Underlying Policy**

| | |
|---|---|
| Company | Great American Insurance Group |
| Policy Number | EXC 2098117 |
| Insurer | Great American Insurance Co. of New York |
| Coverage | Follow Form Excess |
| Policy Period | July 01, 2010 to July 01, 2011 |
| Limit of Liability | $15,000,000 |

**Item 6.**

**Premium:**

*Compliance with all surplus lines placement requirements, including stamping the Policy and collection and payment of surplus lines taxes, is the responsibility of the broker.*

|  |  |
|---|---|
| Premium: | $105,000.00 |
| Tria 1 (Certified): | $1,050.00 |
| Total Amount Due: | $106,050.00 |

*See Invoice for the date Premium is due and payable. Failure to pay the premium in full may result in voidance of coverage.*

Minimum Premium:  25%

**Item 7.  Producer & Mailing Address:**  Ward Adams
Aon Risk Services, Inc. of Southern California aka Aon Risk
707 Wilshire Blvd.
Suite 6000
Los Angeles, CA   90017

**Broker License:**  0530733

**Item 8.  NOTICES TO THE INSURER:**

(a) All notices as required under Section VI.H.1:  Claims Department
(b) All other notices:   Underwriting Department
At the address and numbers shown at the top of the Declarations Page.

**Item 9.  Policy Coverage Form:**  ECA.COV.001 (0510) Commercial Excess Liability Policy
**Endorsements:**  SEE SCHEDULE OF ENDORSEMENTS

**THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION, FOR THIS POLICY AND THE FOLLOWED POLICY, INCLUDING INFORMATION FURNISHED IN CONNECTION THEREWITH WHETHER DIRECTLY OR THROUGH PUBLIC FILING, AND THE POLICY FORM ATTACHED HERETO, CONSTITUTE THE INSURANCE POLICY.**

Date: September 15, 2010
   MO/DAY/YR.                                                  Authorized Representative

**Named Insured:** County of San Bernardino

**Policy Number:** 000541500

**Effective 12:01 AM:** July 01, 2010

# SCHEDULE OF ENDORSEMENTS

**Endorsement Number - Form Number – Edition Date – Form Name**

1. ECA.END.002B (0110) Schedule of Underlying Insurance
2. ECA.END.007 (0609) Claims Notification
3. ECA.END.011 (0709) Employment Practices Liability Endorsement
4. ECA.END.017 (1009) Violation of Economic or Trade Sanctions
5. ECA.END.020 (0410) Act of Terrorism Retention Endorsement



# IRONSHORE SPECIALTY INSURANCE COMPANY

One State Street Plaza
7th Floor
New York, NY  10004
Toll Free: (877) IRON411

**Endorsement #** 1

**Policy Number:** 000541500                                    **Effective Date of Endorsement:** July 01, 2010
**Insured Name:**  County of San Bernardino

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SCHEDULE OF UNDERLYING INSURANCE

| **Controlling Underlying Company**<br>**Coverage:**  Follow Form Excess<br><br>**Insurer:** Great American Insurance Co. of New York<br>**Policy No:**. EXC 2098117<br>**Policy Period:** July 01, 2010 to July 01, 2011 | **Applicable Limits of Liability:**<br><br>$15,000,000 **Each Occurrence**<br>$15,000,000 **Aggregate**, where applicable |
|---|---|
| **Coverage:**  Follow Form Excess<br><br>**Insurer:** Allied World Assurance Company (U.S.) Inc.<br>**Policy No:**. 0305-7214<br>**Policy Period:** July 01, 2010 to July 01, 2011 | **Applicable Limits of Liability:**<br>$10,000,000 **Each Occurrence**<br>$10,000,000 **Aggregate**, where applicable |
| **Coverage:**  Follow Form Excess<br><br>**Insurer:** Starr Indemnity & Liability Company<br>**Policy No:**. WCSIEXS40024010<br>**Policy Period:** July 01, 2010 to July 01, 2011 | **Applicable Limits of Liability:**<br>$15,000,000 **Each Occurrence**<br>$15,000,000 **Aggregate**, where applicable |
| **Policy Form:** Public Entity Excess Liability Policy (EUM 00 514 06 06)<br>**Coverage:**  Occurrence<br>**Insurer:** Everest National Insurance Company<br>**Policy No:**. 71P2000037-101<br>**Policy Period:** July 01, 2010 to July 01, 2011<br><br>**Aggregate Limits**<br>$10,000,000         "Products-Completed Operations Hazard" Aggregate<br>$10,000,000         Errors and Omissions Liability Aggregate, other than "wrongful act" of "personal injury offense" or "advertising injury offense"<br>$10,000,000         "Employee Practices Liability Wrongful Acts" Aggregate         $10,000,000<br><br>**Per "Occurrence" or "Wrongful Act" or "Employee Benefit Wrongful Act" Limit**<br>$10,000,000         Any one "occurrence," "wrongful act" or "employee benefit wrongful act" or series of continuous, repeated, or related "occurrences," "wrongful acts" or "employee benefit wrongful acts" in excess of your "retained limit" | |

| **Per "Employment Practice Liability Wrongful Act Limit"** | |
|---|---|
| $10,000,000 | Any one "employment practice liability wrongful act" or series of continuous, repeated, or related "employment practice liability wrongful acts" in excess of your "retained limit": |
| Excess of various Underlying Insurances per policy on file with company. | |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____       <u>September 15, 2010</u>
Authorized Representative                              Date

ECA.END.002B (01/10)                                                                                              Page 2 of 2



# IRONSHORE SPECIALTY INSURANCE COMPANY

One State Street Plaza
7th Floor
New York, NY  10004
Toll Free: (877) IRON411

**Endorsement #** 2

**Policy Number:** 000541500                                    **Effective Date of Endorsement:** July 01, 2010
**Insured Name:**  County of San Bernardino

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CLAIMS NOTIFICATION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

Send all claim notifications and information to:

YORK Claims Service, Inc.
99 Cherry Hill Road, Suite 102
Parsippany, New Jersey 07054
Attn: Jenai A. Russell, Manager
Fax: (973) 404-9034
Telephone: 1-866-391-9675 (YORK)
Email: 4068ironshorecasualty@york-claims.com
Website: www.york-claims.com

YORK Client Code for Ironshore Casualty: 4068

Key Contacts:

Jenai A. Russell, Manager, YORK Claims Intake Center
Telephone: (973) 404-1155
Email: jenai.russell@york-claims.com

Diane De Cristo, Director, Client Services
Telephone: (908) 595-0248
Email: diane.decristo@york-claims.com


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____                       September 15, 2010
Authorized Representative                                      Date


ECA.END.007 (06/09)                                                                                   Page 1 of 1



# IRONSHORE SPECIALTY INSURANCE COMPANY

One State Street Plaza
7th Floor
New York, NY  10004
Toll Free: (877) IRON411

**Endorsement #** 3

**Policy Number:** 000541500   **Effective Date of Endorsement:** July 01, 2010
**Insured Name:**  County of San Bernardino

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EMPLOYMENT PRACTICES LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

It is agreed that **Exclusion D, Employment-Related Practices Liability**, is deleted from the policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____   September 15, 2010
Authorized Representative   Date



# IRONSHORE SPECIALTY INSURANCE COMPANY

One State Street Plaza
7th Floor
New York, NY  10004
Toll Free: (877) IRON411

**Endorsement #** 4

**Policy Number:** 000541500　　　　　　　　　　　　　　**Effective Date of Endorsement:** July 01, 2010
**Insured Name:**  County of San Bernardino

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# VIOLATION OF ECONOMIC OR TRADE SANCTIONS

This policy is amended as follows:

**Section VI. CONDITIONS** is amended to include the following additional condition:

**Violation of Economic or Trade Sanctions**

If coverage for a claim or "suit" under this policy is in violation of any United States of America's economic or trade sanctions, laws, or regulations, including, but not limited to, sanctions, laws, and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") then coverage for that claim or "suit" shall be null and void.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____　　　　　　　September 15, 2010
Authorized Representative　　　　　　　　　　　　　　　Date



**IRONSHORE SPECIALTY INSURANCE COMPANY**

One State Street Plaza
7th Floor
New York, NY  10004
Toll Free: (877) IRON411

**Endorsement #** 5

**Policy Number:** 000541500

**Insured Name:**  County of San Bernardino

**Effective Date of Endorsement:** July 01, 2010

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ACT OF TERRORISM RETENTION ENDORSEMENT

Solely with respect to any **Act of Terrorism**, this policy is amended as follows:

**Section III., RETENTION**, Paragraph A is amended to include the following **Act of Terrorism Retained Limit**:

3. As respects all liability arising out of an **Act of Terrorism**, an **Act of Terrorism Retained Limit** in the amount of $52,500,000 shall apply per occurrence.

   The **Act of Terrorism Retained Limit** applies whether or not any available **Underlying Policies** or other insurance provide coverage to the **Insured**.  If there are **Underlying Policies** or other insurance providing coverage to the **Insured**, amounts received through such **Underlying Policies** or other insurance for payment of liability arising out of the **Act of Terrorism** may be applied to reduce or exhaust the **Act of Terrorism Retained Limit**.  However, in no event will amounts received through such **Underlying Policies** or other insurance for the payment of **Defense Expenses** reduce the **Act of Terrorism Retained Limit**.

**Section V., DEFINITIONS**, is amended to include the following additional definitions:

C. **Act of Terrorism** means:

   1. any act which is verified or recognized by the United States Government as an act of terrorism, including a certified act of terrorism defined by Section 102. Definitions, of the Terrorism Risk Insurance Act of 2002 and any revisions, amendments, or extensions thereto; or

   2. the use or threatened use of force or violence against person or property or commission of an act dangerous to human life or property or commission of an act that interferes with or disrupts an electronic or communication system undertaken by any person or group whether or not acting on behalf of or in connection with any organization, government, power, authority or military force when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof or to disrupt any segment of the economy.

D. **Defense Expenses** means any payment allocated to a specific loss, claim or suit for its investigation, settlement or defense, including but not limited to:

   1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

    2.    Premiums on bonds to release attachments;

    3.    Premiums on appeal bonds required by law to appeal any claim or suit;

    4.    Costs taxed against the **Insured** in any claim or suit;

    5.    Pre-judgment interest awarded against the **Insured**;

    6.    Interest that accrues after entry of judgment.

E.    **Act of Terrorism Retained Limit** means the amount to be borne by the **Insured** for liability arising out of an **Act of Terrorism** before this policy applies.

It is understood and agreed that if any other endorsement to this policy excludes coverage for an **Act of Terrorism** arising in one or more specified countries, the provisions of such exclusion shall supersede this endorsement.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____          September 15, 2010
Authorized Representative                                                  Date



**IRONSHORE SPECIALTY INSURANCE COMPANY**
One State Street Plaza
7th Floor
New York, NY 10004
Toll Free: (877) IRON411(Hereinafter referred to as the "Insurer")

# COMMERCIAL EXCESS LIABILITY POLICY

**Insured Name:** County of San Bernardino
**Policy Number**: 000541500

In consideration of the payment of premium and in reliance upon the statements in the Declarations of this Policy, the Insurer agrees as follows:

**I.     COVERAGE**

    **A.**   This Policy shall provide the Insured with Commercial Excess Liability Insurance coverage in accordance with the same warranties, terms, conditions, exclusions and limitations as are contained, on the Inception Date of this Policy, in the **Controlling Underlying Policy**, subject to the premium, limits of liability, retention, policy period, warranties, exclusions, limitations and any other terms and conditions of this Policy, including any and all endorsements attached hereto, inconsistent with or supplementary to the **Controlling Underlying Policy**.

**II.    LIMITS OF LIABILITY**

    **A.**   Where an amount is shown for the aggregate limit of liability in Item 3 of the Declarations of this Policy, the amount stated is the most the Insurer will pay for all damages covered under this Policy with respect to coverage subject to an aggregate limit of liability in the **Controlling Underlying Policy**. The aggregate limit(s) of liability under this Policy apply in the same manner as the aggregate limit(s) of liability in the **Controlling Underlying Policy**.

    **B.**   Subject to A. above, the per occurrence, per claim, or per loss limit of liability stated in Item 3 of the Declarations of this Policy is the most the Insurer will pay for all damages arising out of any one occurrence, claim or loss as stated in the **Controlling Underlying Policy**.

    **C.**   Defense costs to which this Policy applies shall not reduce the limits of liability stated in A. and B. above, except to the extent defense costs covered under any **Underlying Policy** reduce the limits of liability of such **Underlying Policy**.

**III.   RETENTION**

    **A.**   The Limits of Liability stated in Item 3 of the Declarations of this Policy apply in excess of:
       1. The total of the limits of liability of the **Underlying Policies** applicable on a per occurrence, per claim or per loss basis, but in no event in an amount less than the total of the per occurrence, per claim or per loss limits of liability of the **Underlying Policies** stated in Item 4 of the Declarations of this Policy.

       2. The total of the limits of liability of the **Underlying Policies** applicable on an aggregate basis, where an b amount is shown in the aggregate limit of liability of the **Underlying Policies** stated in Item 4 of the Declarations of this Policy, but in no event in an amount less than the aggregate limits of liability of the **Underlying Policies** stated in Item 4 of the Declarations of this Policy.

    **B.**   This Policy will not apply in excess of any reduced or exhausted limits of liability of the **Underlying Policies** to

1. Payment of amounts on account of occurrences, claims or loss that are not covered under this Policy; or

2. Uncollectibility in whole or in part of the limits of liability of an **Underlying Policy.**

C. Notwithstanding B.1. above, defense costs incurred by any **Underlying Policy** shall not reduce the limits of liability of such **Underlying Policy**, except to the extent defense costs reduce the limits of liability of an **Underlying Policy**, in which case they will reduce the limits of liability under this Policy.

## IV. EXCLUSIONS

This Policy shall not apply to liability:

### A. ASBESTOS

Arising out of or relating in any way to:

1. The mining, processing, manufacturing, use, testing, ownership, sale or removal of asbestos, asbestos fibers or materials containing asbestos;

2. Exposure to asbestos, asbestos fibers, or material containing asbestos; or

3. Any error or omission in supervision, instructions, recommendations, notices, warnings or advice given, or which should have been given, in connection with asbestos fibers or material containing asbestos.

### B. WAR OR MILITARY ACTION

Arising directly or indirectly, out of:

1. War, including undeclared or civil war; or

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, strike, riot, civil commotion or action taken by governmental authority in hindering or defending against any of these regardless of any other cause or event that contributes concurrently or in sequence to injury or damage.

### C. OTHER LAWS

Arising out of or relating in any way to:

1. The Employee Retirement Income Security Act of 1974 (ERISA) as now or hereafter amended; or

2. Any claim or claims made by or against the Insured with respect to any uninsured/underinsured motorist or automobile no fault or first party personal injury law;

### D. EMPLOYMENT-RELATED PRACTICES LIABILITY

Arising out of any refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions.

This exclusion applies whether the Insured may be held liable as an employer or in any other capacity, and to any obligation to share damages with or to repay someone else who must pay damages because of injury or damage arising out of the employment-related practices, policies, acts or omissions described in the paragraph above.

**E.   NUCLEAR LIABILITY**

1.  With respect to which the Insured is also an Insured under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability;

2.  Resulting from the hazardous properties of nuclear material and with respect to which (a) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendment or revision thereto, or any similar law; (b) the Insured is, or had this Policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

3.  Resulting from the hazardous properties of nuclear material if:

    (a)   the nuclear material (i) is at any nuclear facility owned by the Insured or operated by the Insured or on the Insured's behalf or (ii) has been discharged or dispensed therefrom;

    (b)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the Insured or on the Insured's behalf; or

    (c)   the liability arises out of the furnishing by the Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion 3. applies only to injury to or destruction of such nuclear facility and any property thereat.

4.  As used in this exclusion:

    a.   "hazardous properties" includes radioactive, toxic or explosive properties;

    b.   "nuclear material" means source material, special nuclear material or by-product material;

    c.   "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any amendment or revision thereto ;

    d.   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    e.   "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by   any person or organization of a nuclear facility included within the definition of nuclear facility below;

    f.   "nuclear facility" means:

        i)   any nuclear reactor;

        ii)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

        iii)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the Insured's custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

iv) any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and

includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

g. "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h. injury to or destruction of property includes all forms of radioactive contamination of property.

## V. DEFINITIONS

The following Definitions apply to this Policy:

**A.** **Controlling Underlying Policy** means the policy described in Item 5 of the Declarations of this Policy.

**B.** **Underlying Policies** means each of the policies that are scheduled in the Schedule of Underlying Policies in Item 4 of the Declarations of this Policy and any other applicable underlying insurance, including any self-insured retentions or retained limits.

## VI. CONDITIONS

### A. CONSENT TO JURISDICTION

1. The Insurer, at the request of the Insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of the Insurer's right to commence an action in any Court of competent jurisdiction of the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the party named in Item 7 of the Declarations of this Policy, and that in any suit instituted against the Insurer to effectuate arbitration or to enforce any award entered in such arbitration, the Insurer will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

2. The party named in Item 7 of the Declarations of this Policy is authorized and directed to accept service of process on behalf of the Insurer in any suit or action within the scope of this Condition A. or upon the request of the Insured to give a written undertaking to the Insured that such party will enter a general appearance on the Insured's behalf in the event such a suit shall be instituted.

3. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in, any suit or action by the Insured within the scope of this Condition A., and hereby designates the party named in Item 7 of the Declarations of this Policy as the person to whom the said officer is authorized to mail such process or a true copy thereof.

### B. CANCELLATION CLAUSE

1. This policy may be cancelled by the first Named Insured stated in Item 1 of the Declarations either by mailing or delivering advance written notice to the Insurer stating where the cancellation is to take effect. This policy may be cancelled by the Insurer by mailing to such first Named Insured at the address shown in Item 1 of the Declarations, written notice stating when, not less than thirty (30) days thereafter, ten (10) days thereafter if cancellation is for non-payment of premium, such cancellation is to take effect. Proof of mailing of notice of cancellation shall be sufficient proof of notice and the effective date of cancellation stated in the notice will become the end of the policy period. Delivery of written

notice either by the first Named Insured or by the Insurer shall be equivalent to mailing. If the first Named Insured cancels, earned premium will be computed in accordance with the customary short-rate table and procedure, but the Insurer will always be entitled to receive or keep the Minimum Premium amount stated in Item 6. of the Declarations. If the Insurer cancels, earned premium will be computed pro rata based on the time this policy was in force.

2. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if the Insurer has not made or offered any refund due. The Insurer's or its representative's check, mailed or delivered to the first Named Insured, will be sufficient tender of any refund due.

3. The first Named Insured stated in Item 1 of the Declarations will act on behalf of all other Insureds with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

**C.   ASSISTANCE AND COOPERATION**

1. The Insurer shall have the right but not the duty to assume charge of the defense or settlement of any claim or suit against the Insured to which this Policy may apply upon exhaustion of the applicable limits of liability of the **Underlying Policies.** If the Insurer has exercised such right, it may withdraw from the defense and tender the defense to the Insured upon exhaustion of the applicable limits of liability under this Policy. If the Insurer does not exercise the right to assume charge of such defense or settlement, or if the applicable limits of liability of the **Underlying Policies** are not exhausted, the Insurer shall have the right and shall be given the opportunity to associate effectively with the Insured or the underlying insurer or both in the defense and control of any claim or suit likely to involve this Policy. In such events, the Insured, the underlying insurer and the Insurer shall cooperate in the defense of such claim or suit.

2. The Insured shall not, except at its own expense, settle any claim or suit or incur any defense costs for any an amount to which this Policy applies without the Insurer's written consent.

**D.   APPEALS**

If the Insured or the Insured's underlying insurers do not appeal a judgment in excess of the total applicable limits of **Underlying Insurance**, the Insurer may elect to do so. If the Insurer appeals, it will be liable, in addition to the applicable Limits of Insurance of this policy, for all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Liability of this Policy incidental to such an appeal.

**E.   CHANGES IN CONTROLLED UNDERLYING POLICY**

If during the Policy Period of this Policy, the terms, conditions, exclusions or limitations of the **Controlling Underlying Policy** are changed in any manner from those in effect on the Inception Date of this Policy, the Insured shall, as a condition precedent to its rights under this Policy, give to the Insurer as soon as practicable written notice of the full particulars thereof. This Policy shall become subject to any such changes upon the effective date of the changes in the **Controlling Underlying Policy**, but only upon the condition that the Insurer agrees to follow such changes in writing, and the Insured agrees to any additional premium or amendment of the provisions of this Policy required by the Insurer relating to such changes. Further, such change in coverage is conditioned upon the Insured's payment when due of any such additional premium required by the Insurer relating to such changes.

**F.   MAINTENANCE OF UNDERLYING INSURANCE**
While this Policy is in effect, the Insured agrees to maintain the **Underlying Policies** in full force and effect. The Insured's failure, or the failure of others, to comply with this Condition F. will not invalidate this Policy, but in the event of such failure, the Insurer will only be liable to the same extent as if there had been compliance.

**G.   PAYMENT OF PREMIUM**

The first Named Insured listed in Item 1 of the Declarations of this Policy shall be responsible for and act on behalf of all Insureds with respect to the payment of any premiums due under this Policy.

**H. REQUIRED NOTICES TO INSURER BY INSURED**

1. **Notice of Occurrence, Offense, Claim or Suit**

   a. The Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice as soon as practicable to the Insurer of any occurrence, offense, claim or suit likely to involve this Policy.

   b. Without limiting the requirements of a. above, the Named Insured shall separately, and as soon as practicable, give written notice to the Insurer when a payment is made or reserve established for any occurrence, offense, claim or suit which has brought the total of all payments and reserves by the Insured or underlying insurers to a level of twenty-five percent (25%) or more of the aggregate limits of the **Underlying Policies**.

2. **Notice Regarding Underlying Policies**

   The Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice to the Insurer of the following events as soon as practicable but in no event later than thirty (30) days after an Insured has become aware of the event:

   a. Any **Underlying Policy** being cancelled or non-renewed or otherwise ceasing to be in effect, or being uncollectible in whole or in part; or

   b. Any underlying insurer being subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding or being taken over by any regulatory authority.

3. **Notice Regarding Material Change**
   The Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice to the Insurer of the following events as soon as practicable but in no event later than thirty (30) days after an Insured has become aware of the event that the Named Insured is consolidating with or merging with or into, or transferring all or substantially all of its assets to, or acquiring or being acquired by any natural person or entity or group of natural persons and/or entities acting in concert.

With respect to the Notice required in Paragraphs 1, 2 and 3 of this Condition H., notice to an underlying insurer shall not constitute notice to the Insurer of this Policy.  Notice under this Condition H. shall be given to the Insurer at the appropriate address set forth in Item 7 of the Declarations of this Policy.

**I. RESTRICTIVE AS UNDERLYING**

Notwithstanding any provision to the contrary in this Policy, including, without limitation, the Coverage provisions in Section I of this Policy, if any **Underlying Policy** with limits of liability in excess of the **Controlling Underlying Policy** but underlying to this Policy (the "Intervening Policy") contains warranties, terms, conditions, exclusions or limitations more restrictive than the **Controlling Underlying Policy,** whether on the effective date of this Policy or at any time during the Policy Period of this Policy, then this Policy shall be deemed to follow those more restrictive warranties, terms, conditions, exclusions or limitations of the Intervening Policy.

**J. UNIMPAIRED UNDERLYING LIMITS OF LIABILITY**

The Insured warrants that the aggregate limits of liability of the **Underlying Policies**, as shown in the Schedule of Underlying Policies, shall be unimpaired as of the effective date of this Policy. In the event such underlying aggregate limits of liability are impaired as of the effective date of this Policy, this Policy shall apply as if such aggregate limits of liability were unimpaired. In the event of non-concurrent policy

periods between this Policy and **Underlying Policies**, only occurrences or claims that would be covered during the Policy Period of this Policy shall be considered in determining the extent of any reduction or exhaustion of the underlying aggregate limits of liability, and the Insured shall retain liability for any resulting gap in coverage.

**IN WITNESS WHEREOF**, the Insurer has caused this Policy to be signed by its duly authorized officer.

Ironshore Specialty Insurance Company by:

Secretary                                                                                    President