# Exhibit B

**POLICY NUMBER:**   71P2000037-101
**RENEWAL OF:**       71P2000037-091

| ITEM 1. Named Insured | County of San Bernardino |
| --- | --- |

**ITEM 1.**
**Named**
**Insured**

**County of San Bernardino**

Address
(Street,
Town,
State)

222 W. Hospitality Lane, 3rd Floor
San Bernardino, CA 92415

☐  Everest National Insurance Company
477 Martinsville Road
P.O. Box 830 Liberty Corner, NJ 07938-0830
1-800-438-4375

Managing Underwriter:
C.V. Starr & Co.

## PUBLIC ENTITY EXCESS LIABILITY POLICY DECLARATIONS

In return for the payment of the premium, we agree to provide the insurance as stated in this Policy.

**ITEM 2.**   **POLICY**   FROM:   July 1, 2010       TO:    July 1, 2011       AT 12:01 A.M.
           **PERIOD**   STANDARD TIME AT THE ADDRESS OF THE **NAMED INSURED** SHOWN ABOVE.

**ITEM 3.**    **LIMITS OF INSURANCE**

The Limits of Insurance, subject to all the terms and conditions of this Policy are:

A.   Limits of Insurance

    1.  Aggregate Limits                Limits of Liability

        a.  $10,000,000    "Products-Completed Operations Hazard" Aggregate

        b.  $10,000,000    Errors and Omissions Liability Aggregate, other than "wrongful acts" of "personal injury offense" or "advertising injury offense"

        c.  $10,000,000    "Employment Practice Liability Wrongful Acts" Aggregate

        d.  $10,000,000    Employee Benefit Liability Aggregate

    2.  Per "Occurrence" or "Wrongful Act" or
       "Employee Benefit Wrongful Act" Limit

          $10,000,000    Any one "occurrence", "wrongful act" or "employee benefit wrongful act" or series of continuous, repeated, or related "occurrences", "wrongful acts" or "employee benefit wrongful acts" in excess of your "retained limit".

    3.  Per "Employment Practice
       Liability Wrongful Act" Limit

          $10,000,000    Any one "employment practice liability wrongful act" or series of continuous, repeated, or related "employment practice liability wrongful acts" in excess of your "retained limit".

**B.** **"Retained Limit"**

| | | |
|---|---|---|
| 1. | $2,500,000 | Any one "occurrence" or "wrongful act" or 'employee benefit wrongful act" or series of continuous, repeated, or related "occurrences", "wrongful acts" or "employee benefit wrongful acts". |
| 2. | $2,500,000 | Any one "employment practice liability wrongful act" or series of continuous, repeated, or related "employment practice liability wrongful acts". |

**ITEM 4.** **ENDORSEMENTS APPLICABLE TO THIS POLICY ON THE ORIGINAL DATE OF ISSUE:**

| Title | Number |
|---|---|
| Schedule of Underlying Insurance | EDEC 557 05 06 |
| Nuclear Energy Liability Exclusion Endorsement | CU 21 23 02 02 |
| California Changes-Cancellation and Nonrenewal | CU 02 23 11 04 |
| Cap on Losses from Certified Acts of Terrorism | CU 21 30 01 08 |
| Disclosure Pursuant to Terrorism Risk Insurance Act | IL 09 85 01 08 |
| Common Policy Conditions | IL 00 17 11 98 |
| Pollution Changes | EIL 01 510 07 08 |
| Addendum to the Declarations | EUM 27 502 05 06 |
| Earlier Notice of Cancellation or Nonrenewal | EUM 02 536 05 06 |
| Exclusion-Time Element Pollution | EUM 21 723 05 06 |
| Additional Insured - Contract | EUM 20 505 05 06 |
| Dam Coverage with Exception for Specifically Excluded Dams; Amended Subsidence Exclusion | EUM 22 544 04 09 |
| Policy Changes-Amendatory Endorsement | CU 22 40 12 04 |
| Company Signature Page | EIL 00 515 03 07 |

**ITEM 5.** **PREMIUM, MINIMUM PREMIUM AND MINIMUM EARNED PREMIUM**

| POLICY PREMIUM | MINIMUM PREMIUM | MINIMUM EARNED PREMIUM |
|---|---|---|
| $1,157,580 | $1,157,580 | $289,395 |

**ITEM 6.**

| **A.** **NOTICE OF CLAIM OR SUIT REPORTING LOCATION:** | **B.** **RETAINED LIMIT CLAIMS SERVICING ORGANIZATION:** |
|---|---|
| Name: Everest National Insurance Company Westgate Corporate Center<br>Address: 477 Martinsville Road Liberty Corner, NJ 07938-0830<br>Phone Number: | Name: Self-Administered<br>Address:<br>Phone Number: |

These Declarations and attached Schedule (if applicable), together with the terms and conditions, Policy form, and any endorsement(s), complete the above numbered policy.

This Policy is not valid unless countersigned by a duly authorized agent of the Company.

**Producer Name and Address**
*(Not an authorized broker of Everest National Insurance Company)*

| Swett & Crawford |
| 21650 Oxnard St., Suite 1400 |
| Woodland Hills, CA  1367 |

**Date of Issue:** August 9, 2010   **Countersigned By:** _____

**Authorized Representative**

## PUBLIC ENTITY EXCESS LIABILITY POLICY
## SCHEDULE OF UNDERLYING INSURANCE

| Named Insured: | County of San Bernardino | Effective Date: | July 1, 2010 |
|---|---|---|---|
| Policy Number: | 71P2000037-101 | Issuing Company: | Everest National Insurance Company |

| UNDERLYING POLICY OR COVERAGE | LIMITS OF INSURANCE |
|---|---|

| | |
|---|---|
| Type of Policy or Coverage: Employer's Liability<br><br>Insurer: Arch Insurance Company<br><br>Policy Number: WCX 0034243 01<br><br>Policy Term: July 1, 2010 to July 1, 2011 | $3,000,000  Each Accident<br>$3,000,000  Disease, Each Employee<br>$3,000,000  Aggregate<br><br>Retained Limit<br><br>$5,000,000  Each Accident<br>$5,000,000  Disease, Each Employee |
| Type of Policy or Coverage:<br><br>Insurer:<br><br>Policy Number:<br><br>Policy Term: | |
| Type of Policy or Coverage:<br><br>Insurer:<br><br>Policy Number:<br><br>Policy Term: | |

| Date of Issue: | August 9, 2010 | Authorized Representative: | |
|---|---|---|---|

EDEC 557 05 06

# PUBLIC ENTITY EXCESS LIABILITY POLICY

**PREAMBLE**

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties, and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured(s) shown in the Declarations and any other person(s) or organization(s) qualifying as a Named Insured under this Policy. The words "we", "us", and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II. WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V. DEFINITIONS.**

**SECTION I.  COVERAGES**

**A.  INSURING AGREEMENTS**

**1.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

We will pay on behalf of the insured, the "ultimate net loss", in excess of the "retained limit", that the insured becomes legally obligated to pay by reason of liability imposed by law because of "bodily injury" or "property damage" caused by an "occurrence" to which this insurance applies and that takes place in the "coverage territory" during the Policy Period.

**2.  ERRORS AND OMISSIONS LIABILITY**

We will pay on behalf of the insured, the "ultimate net loss", in excess of the "retained limit", that the insured becomes legally obligated to pay to compensate others for loss arising out of your "wrongful act" to which this insurance applies and that takes place in the "coverage territory" during the Policy Period.

**3.  EMPLOYMENT PRACTICE LIABILITY**

We will pay on your behalf, the "ultimate net loss", in excess of the "retained limit", that the insured becomes legally obligated to compensate others for loss arising out of your "employment practice liability wrongful act" that takes place in the "coverage territory" during the Policy Period.

**4.  EMPLOYEE BENEFIT LIABILITY**

We will pay on behalf of the insured, the "ultimate net loss", in excess of the "retained limit", that the insured becomes legally obligated to compensate others for loss arising out of your "employee benefit wrongful act" in the "administration" of your employee benefit program to which this insurance applies and that takes place in the "coverage territory" during the Policy Period.

**5.** This insurance applies to "bodily injury", "property damage", "wrongful acts", "employment practice liability wrongful acts" or "employee benefit wrongful acts" only if, prior to the Policy Period, no insured listed under Paragraphs **1.** or **2.** of **SECTION II. WHO IS AN INSURED**, and no "employee" authorized by you to give or receive notice of an "occurrence", "wrongful act", "employment practice liability wrongful act", "employee benefit wrongful act" or "claim" knew that the "bodily injury", "property damage", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act" had occurred or had taken place, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the Policy Period, that the "bodily injury", "property damage", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act" occurred or took place, then any continuation, change or resumption of such "bodily injury", "property damage", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act" during or after the Policy

Period will be deemed to have been known prior to the Policy Period.

The "bodily injury", "property damage", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act" which occurs during the Policy Period and was not, prior to the Policy Period, known to have occurred or taken place by any insured listed under Paragraphs **1.** or **2.** of **SECTION II. WHO IS AN INSURED**, or any "employee" authorized by you to give or receive notice of an "occurrence", "wrongful act", "employment practice liability wrongful act", "employee benefit wrongful act" or "claim", includes any continuation, change or resumption of that "bodily injury", "property damage", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act" after the end of the Policy Period.

The "bodily injury", "property damage", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act" will be deemed to have been known to have taken place or occurred at the earliest time when any insured listed under Paragraphs **1.** or **2.** of **SECTION II. WHO IS AN INSURED**, or any "employee" authorized by you to give or receive notice of an "occurrence", "wrongful act", "employment practice liability wrongful act", "employee benefit wrongful act" or "claim":

a. Reports all, or any part, of the "bodily injury", "property damage", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act" to us or any other insurer;

b. Receives a written or verbal demand or "claim" for damages because of the "bodily injury", "property damage", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act"; or

c. Becomes aware by any other means that "bodily injury", "property

damage", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act"  has taken place, occurred or has begun to occur.

Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**B. DEFENSE**

We will have the right and duty to defend the insured against any "claim" or "suit" seeking damages for "bodily injury" "property damage", "wrongful acts", "employment practice liability wrongful acts" or "employee benefit wrongful acts" to which this insurance applies when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" or your self-insured retention of the "retained limit" have been exhausted by payment to a third party of judgments, settlements, or defense costs, or by payment of "covered first-party automobile expenses".  When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "wrongful acts", "employment related practice wrongful act" or "employee benefit wrongful acts" to which this insurance does not apply.  At our discretion, we may investigate any "occurrence", "wrongful act", "employment related practice wrongful act" or "employee benefit wrongful act" that may involve this insurance and settle any resultant "claim" or "suit" for which we have the duty to defend.  But:

1. The amount we will pay for the "ultimate net loss" is limited as described in **SECTION III. LIMITS OF INSURANCE**; and

2. Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements, defense costs, or "covered first-party automobile expenses".

## C.  DEFENSE COSTS

1.  All expenses we incur in the defense of any "claim" or "suit" are included within and erode the Limits of Insurance, except for salaries of our employees, our office expenses, and any expenses of any claims service provider working on our behalf.

2.  We will pay, with respect to any "claim" we investigate or settle, or any "suit" against an insured we defend, when the duty to defend exists:

    a.  All expenses we incur;

    b.  Costs taxed against any insured in the "suit";

    c.  The cost of appeal bonds or bonds to release attachments. But we will only pay for bond amounts to which our Limits of Insurance apply. We do not have to furnish these bonds;

    d.  Other reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim" or "suit". This includes actual loss of earnings up to $500 a day, because of time off from work;

    e.  Prejudgment interest awarded against any insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer; or

    f.  Interest on the amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

3.  As respects any "claim" or "suit" to which this insurance applies and for which we do not assume control of the settlement or defense:

    a.  We will pay expenses we directly incur at our discretion; and

    b.  We will not pay expenses:

        (1)  Incurred by any insured; or

        (2)  Included in the self-insured retention, "underlying insurance" or other insurance.

4.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

    a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    b.  This insurance applies to such liability assumed by the insured;

    c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

    d.  The allegations in the "suit" and the information we know about the "occurrence" "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

    e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee;

    f.  The indemnitee:

        (1)  Agrees in writing to:

            i.   Cooperate with us in the investigation, settlement or defense of the "suit";

            ii.  Immediately send us copies of any demands, notices, summons or legal papers received in connection with the "suit";

            iii. Notify any other insurer whose coverage is available to the indemnitee; and

    **iv.** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee;

  **(2)** Provides us with written authorization to:

    **i.** Obtain records and other information related to the "suit"; and

    **ii.** Conduct and control the defense of the indemnitee in such "suit".

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Defense Costs ends when we have used up the applicable Limit of Insurance in the payment of judgments, defense expenses, settlements, "covered first-party automobile expenses" or the conditions set forth above, or the terms of the agreement in Paragraph **f.** above, are no longer met.

## D. EXCLUSIONS

This insurance does not apply to a "claim" or "suit" against you for:

  **1.** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

  **2.** "Bodily injury" or "property damage" arising out of a "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act" whether causing or contributing to such "bodily injury" or "property damage" unless the "bodily injury" or "property damage" arises out of an "occurrence".

  **3.** Any liability arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, airfields, runways, hangars, buildings or other properties in connection with aviation activities. Use includes operation and "loading or unloading".

However, this exclusion does not apply if the "occurrence" is in an area normally accessible to the public for the purpose of entering, leaving, or using the "airport facilities".

  **4.** Any obligation for which any insured may be held liable under any of the following: workers' compensation laws, unemployment compensation laws, disability benefits laws or any similar laws.

  **5.** "Bodily injury" to any "employee" of the insured for the acts of another of your "employees" arising out of and in the course of their employment by the insured. This exclusion does not apply to liability assumed by you in a contract or agreement that is an "insured contract".

  **6.** Any liability for any "advertising injury offense" arising out of:

    **a.** A breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

    **b.** The failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

    **c.** The wrong description of the price of goods, products, or services stated in your "advertisement"; or

    **d.** Any of your operations whose primary business is advertising, broadcasting, publishing or telecasting.

  **7.** "Property damage" to:

    **a.** Property owned by you; or

    **b.** Aircraft in the care, custody or control of the insured including aircraft of which you are exercising physical control.

  **8.** Any liability for which you are obligated to pay damages by reason of assumption of liability in any contract or agreement. This exclusion does not apply to liability for damages:

    **a.** Assumed in a contract or agreement that is an "insured contract" provided

the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** Liability for damages that you would have in the absence of the contract or agreement.

**9.  a.** Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**b.** Any loss, cost, or expense arising out of any:

**(1)** Request, demand, order, statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants"; or

**(2)** "Claim" or "suit" by, or on behalf of, a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants", unless such loss, cost, or expense arising from any spill, release, or other hazardous condition at or from the premises, equipment, or location(s) which you do not own, rent, control or occupy.

However, this exclusion shall not apply to the following:

**i.** Any liability arising out of heat, smoke, or fumes from a "hostile fire";

**ii.** Any liability arising out of explosion, lightning, windstorm, vandalism or malicious mischief, collapse, riot and civil commotion, flood, earthquake or collision, upset, or overturn of an "automobile" or equipment;

**iii.** Any liability arising out of police use of mace, oleoresin capsicum (o.c.), pepper gas or tear gas;

**iv.** Any liability arising from weed abatement or spraying; or

**v.** Any liability arising out of the "products-completed operations hazard".

All liability arising from paragraphs **i., ii., iii., iv.,** or **v.** above arising out of the same, interrelated, associated, repeated or continual discharge, dispersal, release or escape of "pollutants" shall be deemed one "occurrence", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act".  The commencement of such discharge, dispersal, release or escape of "pollutants" shall be recorded and reported to the Risk Manager or designated Department Head within a seventy-two (72) hour period.

Regardless of whether any "suit" or "claim" against you has been made, you shall give written notice to us or any authorized brokers within forty (40) calendar days of the Risk Manager's or designated Department Head's recorded entry of such discharge, dispersal, release or escape of "pollutants" which may result in liability as described in paragraphs **i., ii., iii., iv.,** or **v.** above.

**10.  a.** Any liability arising, in whole or in part, out of actual or alleged, threatened or suspected, inhalation of, ingestion of, contact with, exposure to, existence of, or presence of asbestos; or

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of or in any way responding to or assessing the effects of asbestos by any

insured or by any other person or entity.

11. "Bodily injury" or "property damage" arising out of the failure or inability to supply or provide an adequate supply of electricity, gas, steam or water;

This exclusion does not apply if:

a. Such failure arises out of a "wrongful act" or "occurrence"; and

b. The combined capacity of your installed production facilities and contractual supply arrangements is equal to or greater than one hundred and ten percent (110%) of the electricity, steam and/or gas demand or one hundred percent (100%) of the water demand, whichever demand is applicable to your electric, gas, steam or water system.

12. Any liability arising out of the handling of "claims" or "suits" within the "retained limit", including investigation, defense or settlement of "claims" and suits.

13. Any liability arising out of failing to procure or effect insurance contracts.

14. Any obligation of the insured under the Employee Retirement Income Security Act (E.R.I.S.A) and amendments thereto or any similar federal, state or local statute.

15. Any liability arising out of criminal, fraudulent, dishonest or malicious acts or omissions committed by or at the direction of the insured.  We may, at our sole discretion, agree to waive this exclusion in order to supply certain payments under Paragraph **C. Defense Costs** of **SECTION I. COVERAGES**. If the judgment or final adjudication is adverse to you, you will reimburse us for all defense costs.

This exclusion does not apply to liability arising from the managerial, advisory, supervisory, or controlling obligations of any insured over the actions of another insured.

16. Any liability arising out of your "wrongful act" for gain, profit, or advantage to which you are not legally entitled. We may, at our sole discretion, agree to waive this exclusion in order to supply certain payments under Paragraph **C. Defense Costs** of **SECTION I. COVERAGES** as respects any "claim" or "suit" arising from an alleged criminal, fraudulent, dishonest or malicious act or omission committed by or at the direction of you, for any "claim" or "suit" arising out of your wrongful act for gain, profit, or advantage to which you are not legally entitled until final adjudication, judgment or settlement to which we have agreed.  If the judgment or final adjudication is adverse to you, you will reimburse us for all costs associated with the defense.

This exclusion does not apply to liability that any insured has with regard to the managerial, advisory, supervisory, or controlling obligations over the actions of another insured.

17. Any liability for  "personal injury offense" or "advertising injury offense":

a. Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity; or

b. Arising out of oral or written publication of material whose first publication took place before the beginning of the Policy Period.  All "personal injury offense" or "advertising injury offense" arising out of publication of the same or similar material subsequent to the beginning of the Policy Period is also excluded.

18. Any liability for the purchase, sale, or offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument arising out of:

a. Representations made by you at any time in relation to the price or value of any security, debt, bank deposit, or financial interest or instrument, including, but not limited to, advice given to any person to participate in

any plan included in the "employee benefit program";

    **b.** Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument;

    **c.** An insufficiency of funds to meet any obligation under any "employee benefit program";

    **d.** Any act, error, or omission by you to effect and maintain insurance or bonding for plan property or assets of "employee benefit program"; or

    **e.** Failure of performance or lack of performance under any contract by an insurer of benefits subject to the "employee benefit program".

**19.** "Property damage" caused by, arising out of, resulting from, attributable to, or contributed to, or aggravated by "subsidence".

**20.** Liability arising out of the direct condemnation of property or exercise of power of eminent domain by you or on your behalf, or inverse condemnation, or the taking of any property by you which is compensable under the Fifth or Fourteenth Amendments to the United States Constitution, or the taking of any property by you which is compensable under law of the State in which the "claim" or "suit" is made.

This exclusion does not apply to physical injury or to destruction of tangible property, including all resulting loss of use of such property for which you may be legally responsible and for which recovery is sought for "claims" or "suits" for inverse condemnation, by whatever name called however, there shall be no coverage for reduced value of property (diminution of value), attorney fees, expert fees, severance damages, relocation costs or any other form of relief, however denominated.

**21.** Any liability arising out of the rupture, bursting, over-topping, flooding, cracking, seepage, under-seepage,

accidental discharge or partial or complete structural failure of any "dam".

**22.** Any liability arising out of refund of taxes, fees or assessments.

**23.** Liability arising out of the operation of any hospital, clinic, or health care facility, owned or operated by the insured. This includes, but is not limited to:

    **a.** The rendering or failure to render:

        **(1)** Medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;

        **(2)** Any service or treatment related to physical or mental health or of a professional nature; or

        **(3)** Any cosmetic or tonsorial service or treatment.

    **b.** The furnishing of or dispensing of drugs or medical, dental or surgical supplies or appliances.

This exclusion does not apply to any liability arising out of:

    **i.** Occupational physical examinations, non-clinic nursing services or services of your "employees" who are nurses, paramedics, emergency medical technicians, speech therapists, speech pathologists, nutritionists, psychologists, audiologists, or physical therapists;

    **ii.** "Employment practice liability wrongful act";

    **iii.** "First aid" to any person;

    **iv.** Any nursing services clinic that does not perform invasive surgery of any kind; or

    **v.** Operations performed by coroners.

**24.** Any liability arising out of or in connection with any transit authority, transit system, or public transportation system owned, operated, or regulated by

any insured, unless the transit or public transportation systems operate over non-fixed routes, including, but not limited to, Dial-a-Ride, senior citizen transportation, or handicapped persons transportation or to contingent liability coverage where such services are contracted.

25. Any liability for injunctions, equitable relief, or any other form of relief other than the payment of money damages.

26. Any liability arising out of or in connection with the operation of any school owned or operated by you.

27. Any obligation of any insured under any Uninsured Motorist or Underinsured Motorist law and to any sums you may be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured "automobile" because of "bodily injury" and "property damage" sustained by any insured, caused by an "occurrence" and arising out of the ownership, maintenance or use of such "automobile". Use includes operation and "loading and unloading".

## SECTION II. WHO IS AN INSURED

The following are insureds under this insurance:

1. You;

2. Any individual who was previously or is presently elected or appointed as an official of the Named Insured, including members of its governing body or any other agencies, districts, authorities, committees, trustees, boards, commissions, or similar entity of the Named Insured, but only with respect to their duties as an official of the Named Insured;

3. Your "volunteer workers" only while performing duties related to the conduct of the Named Insured, or your "employees" but only for acts within the scope of their employment by you or while performing duties related to the conduct of the Named Insured;

4. Any legally authorized "joint power authority(ies)" representing any Named Insured.  The following are also insureds

with respect to such "joint power authority(ies)":

a. The interest of "municipality" agencies participating as member agencies in the "joint power authority(ies)", and any and all districts, authorities, committees, trustees, boards, commissions, or similar entity subject to the direction or control of such agencies or for which the board members act as governing body.  A member agency includes any department or constituent agency of the member agency; and

b. Any individual who was previously or is presently elected or appointed as an official of a member agency in the "joint power authority", but only with respect to their duties as an official of the member agency, including acting on boards at the direction of the agency; or

c. Any "volunteer worker" of the member agency only while performing duties related to the conduct of the member agencies, or any "employee" of the member agencies but only for acts within the scope of their employment or while performing duties related to the conduct of the member agencies.

5. Any person designated in paragraphs **1.** through **4.** above:

a. Using any "automobile" not owned by you that is used in connection with your operations as a "public entity"; or

b. Using with your permission any owned "automobile" of yours or "hired automobile" or any person legally responsible for the use thereof,

except:

i. Any person using an "automobile" while he or she is working in a business of selling, servicing, repairing, delivering, testing, parking, or storing "automobiles"; or

ii. The owner or lessee of any "hired automobile". This exception does not apply if the owner or lessee is an insured designated in paragraphs **1.** through **4.** above.

## SECTION III.    LIMITS OF INSURANCE

1. Limits of Insurance shown in the Declarations and the rules below fix the most we will pay in excess of your "retained limit" regardless of the number of:

   **a.** Insureds, except in the event that there are multiple "municipalities" as Named Insureds, the Limits of Insurance shall apply separately to each "municipality" insured under this Policy;

   **b.** "Claims" made or "suits" brought; or

   **c.** Persons or organizations making "claims" or bringing "suits".

2. The "retained limit" stated in the Declarations applies:

   **a.** Only to damages for "occurrences", losses for "wrongful acts", losses for "employment practice liability wrongful acts", or losses for "employee benefit wrongful acts" covered under this Policy;

   **b.** Separately to each "occurrence", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act" or series of continuous, repeated, or related "occurrences", "wrongful acts", "employment practice liability wrongful acts" or "employee benefit wrongful acts"; and

   **c.** Separately to each "municipality" insured under this Policy in the event that there are multiple "municipalities" as Named Insureds.

3. We will pay any sums covered under this Policy only after your "retained limit" has been exhausted by means of payments for judgments, settlements, defense costs or "covered first-party automobile expense" for "claims" and "suits" subject to Paragraph **2.** above.

We will then pay damages in excess of your "retained limit" up to our Limits of Insurance.

4. If you procure "underlying insurance" with limits of liability that are less than your "retained limit", you shall bear the risk of the difference.  If such limits are greater than your "retained limit", this Policy is excess of the greater limits.

5. Subject to Paragraph **1.** above and Paragraph **7.** below:

   **a.** The Per Occurrence, Wrongful Act or Employee Benefit Wrongful Act Limit of Insurance stated in the Declarations is the most we will pay for the sum of all damages in "ultimate net loss" for:

      **(1)** "Bodily injury" or "property damage" arising out of a single "occurrence";

      **(2)** A single "wrongful act"; or

      **(3)** A single "employee benefit wrongful act".

   **b.** The Employment Practice Liability Wrongful Act Limit of Insurance stated in the Declarations is the most we will pay for the sum of all damages in "ultimate net loss" for a single "employment practice liability wrongful act".

6. In determining the Limits of Insurance that apply:

   **a.** All "occurrences" arising out of continuous, repeated, or related "occurrences" shall be treated as a single "occurrence" and Limits of Insurance in effect at the first occurrence shall apply;

   **b.** All "wrongful acts" arising out of continuous, repeated, or related "wrongful acts" shall be treated as a single "wrongful act" and Limits of Insurance in effect at the time of the first "wrongful act" shall apply;

   **c.** All "employment practice liability wrongful acts" arising out of continuous, repeated, or related

"employment practice liability wrongful acts" shall be treated as a single "employment practice liability wrongful act" and Limits of Insurance in effect at the time of the first "employment practice liability wrongful act" shall apply;

**d.** All "employee benefit wrongful acts" arising out of continuous, repeated, or related "employee benefit wrongful acts" shall be treated as a single "employee benefit wrongful act" and Limits of Insurance in effect at the time of the first "employee benefit wrongful act" shall apply.

**7.** Subject to **1.** above, the Aggregate Limits stated in the Declarations apply as shown below:

**a.** Products-Completed Operations Hazard Aggregate- The Aggregate Limit of this insurance is the most we will pay for all damages arising out of the "products-completed operations hazard".

**b.** Errors and Omissions Liability Aggregate- The Aggregate Limit of this insurance is the most we will pay for all damages arising out of all "wrongful acts", other than any "personal injury offense" and any "advertising injury offense".

**c.** Employment Practice Liability Aggregate- The Aggregate Limit of this insurance is the most we will pay for all damages arising out of all "employment practice liability wrongful acts".

**d.** Employee Benefit Liability Aggregate- The Aggregate Limit of this insurance is the most we will pay for all damages arising out of all "employee benefit wrongful acts".

**8.** Limits of Insurance apply separately to each consecutive annual period. The Policy Period begins with the effective date shown in the Declarations. If the Policy Period is extended after issuance for an additional period of less than twelve (12) months, the additional period will be deemed part of the last preceding period.

**SECTION IV.  GENERAL CONDITIONS**

**1. Appeals**

If the "underlying insurer" or insured elects not to appeal a judgment in excess of your "retained limit", we may do so at our own expense.  We will not be liable for any award or judgment that exceeds the Limits of Insurance as stated in the Declarations.

**2. Bankruptcy or Insolvency**

Bankruptcy or insolvency of the insured, the insured's estate, or the "underlying insurer"  will not relieve us of our obligations under this Policy.

However, this insurance will not drop down or replace the "retained limit" in the event of bankruptcy or insolvency of the "underlying insurer" or of the insured, or assume any obligation associated with your "retained limit". This insurance will apply as if the "retained limit" were in full effect.

**3. Duties in The Event of an "Occurrence", "Wrongful Act", "Employment Practice Liability Wrongful Act", "Employee Benefit Wrongful Act" Or "Claim" or 'Suit"**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence", "wrongful act", "employment practice liability wrongful act", or "employee benefit wrongful act", regardless of the amount, which may result in a "claim". To the extent possible, notice should include:

**(1)** How, when and where the "occurrence", "wrongful act", "employment practice liability wrongful act", or "employee benefit wrongful act" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence", "wrongful act",

"employment practice liability wrongful act", or "employee benefit wrongful act".

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

 **(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

 **(2)** Notify us as soon as practicable.

**c.** You and any other involved insured must:

 **(1)** Cooperate with the "underlying insurers" as required by their terms and conditions;

 **(2)** Pursue all rights of contribution or indemnity against any person or organization who may be liable to you because of "bodily injury", "property damage", "personal injury offense", "advertising injury offense", "wrongful act", "employment practice liability wrongful acts", or "employee benefit wrongful act" under this Policy or any "underlying insurance". This condition, however, shall not apply to the self insured retention of the "retained limit".

**d.** When we believe that a "claim" or "suit" may exceed the "retained limit", we may join you and, if applicable, the "underlying insurer" in the investigation, settlement and defense of all "claims" and "suits" in connection with such "occurrence", "wrongful act", "employment practice liability wrongful act", or "employee benefit wrongful act". In such event, we and you will cooperate fully with each other.

**e.** Special Serious "Claims" Reporting Requirements

 You must see to it that we receive written notice as soon as practicable of all "occurrences", "wrongful acts", "employment practice liability wrongful

act" or "employee benefit wrongful acts" for "claims" or "suits" of which you become aware which involve:

 **(1)** A serious case where, in which your judgment or the judgment of your defense counsel, the exposure may exceed 50% of your "retained limit";
 **(2)** A demand or demands totaling 50% of your "retained limit" or more;
 **(3)** Death;
 **(4)** Paralysis, paraplegia, quadriplegia;
 **(5)** Loss of eye(s) or limb(s);
 **(6)** Spinal cord or brain injury;
 **(7)** Sensory organ or nerve injury, or neurological deficit;
 **(8)**  Serious burns;
 **(9)** Sexual abuse or molestation;
 **(10)**  Substantial disability or disfigurement; or
 **(11)**  Loss of work time of six months or more.

**f.** Such notice is to be sent with all pertinent facts as respect **SECTION IV.  CONDITIONS**, paragraphs 3.a through 3.e. to the name and address listed in the Declarations, Item 6.A.

**4.  Legal Actions Against Us**

No person or organization has a right under this Policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Policy unless all of its terms have been fully complied with.

 A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

 This insurance does not give anyone the right to add us as a defendant in an

action against you to determine your liability.

**5. Other Insurance**

This insurance is excess over, and shall not contribute with any of the other valid insurance or group coverage under a joint powers authority, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Policy.

**6. Policy Period**

The Policy Period commences on the effective date shown in the Declarations. The period ends on the earlier of either the expiration date or the effective date of cancellation of this Policy. If you became an insured under this Policy after the effective date, the Policy Period begins on the date you became an insured.

**7. Representations Or Fraud**

By accepting this Policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us;

**c.** We have issued this Policy in reliance upon your representations; and

**d.** This Policy is void in any case of fraud by you as it relates to this Policy or any "claim" under this Policy.

**8. Separation of Insureds**

Except with respect to the **SECTION III. LIMITS OF INSURANCE** and any rights or duties specifically assigned in this Policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom a "claim" is made or "suit" brought.

**9. Transfer of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Recoveries will be applied in the following order:

**a.** First, to reimburse any interests (including those of the insured) that may have paid any amounts in excess of our liability under this Policy;

**b.** Then, to reimburse us for all amounts paid under this Policy; and

**c.** Finally, to reimburse all other interests (including those of the insured) with respect to the remaining amounts, if any.

The expenses of the recovery will be distributed in proportion to the share of each party's recovery. But, if we conduct the recovery proceedings by ourselves:

**a.** We will pay all expenses; and

**b.** If we make a recovery, we will be reimbursed in full from the recovery for our expenses before the recovery is distributed.

**10. When We Do Not Renew**

If we decide not to renew this Policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than thirty (30) days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

## 11. Arbitration

Any dispute arising from or relating to this Policy shall be submitted to arbitration. Either party may commence arbitration by making a written demand to the other.

When this demand is made, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within thirty (30) days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

**1.** Pay the expenses it incurs, including the expenses of the arbitrator it appoints; and

**2.** Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will be in the county or parish in which the address shown in the Declarations is located, and the panel will be relieved of any strict rules of procedure. A decision agreed to by two of the arbitrators will be binding and final.

## 12. Named Insureds

The Named Insureds jointly and severally agree to make any premium payments in full if the First Named Insured fails to pay the amount due within thirty (30) days after we give a written demand for payment to the First Named Insured.

## 13. Our Right of Approval

We reserve the right to approve defense counsel for "claims" or "suits" likely to exceed your "retained limit".

## 14. Endorsements To This Policy

Reference to Commercial Liability Umbrella Coverage Part or Commercial Excess Liability Coverage Part in any endorsement that is attached to or made a part of this Policy shall apply to this Policy.

## 15. Minimum Premium And Minimum Earned Premium

Earned premium shall be subject to the Minimum Premium and the Minimum Earned Premium, as stated in the Declarations. In the event of cancellation by the insured, there will be no return of any portion of the Minimum Earned Premium.

## SECTION V.   DEFINITIONS

**A.** "Administration" means:

**1.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of the "employee benefit program";

**2.** Handling records in connection with the "employee benefit program"; or

**3.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling of payroll deductions.

**B.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**1.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**2.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

**C.** "Advertising injury offense" means any act, error, or omission constituted by one or more of the following:

**1.** Oral or written publication, in any manner, of material that slanders or libels a person or organization, or

disparages a person's or organization's goods, products, or services;

2. Oral or written publication, in any manner, of material that violates a person's right of privacy;

3. Misappropriation of advertising ideas or style of doing business; or

4. Infringing upon another's copyright, trade dress or slogan.

D. "Airport facility" means an airfield, runway, hangar, or other aviation activity related buildings or properties, including parking lots and garages.

E. "Automobile" or "Auto" means;

1. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment;

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

3. Such land motor vehicles used in a transit or public transportation system operating over non-fixed routes as provided in the exception provisions of Exclusion 24.

F. "Bodily Injury" means bodily injury, disability, sickness, or disease sustained by a person, including care, loss of services and death resulting from any of these at any time. "Bodily injury" includes mental anguish, mental injury, humiliation, shock or death if resulting from "bodily injury".

G. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

H. "Claim(s)" means a demand for money and includes a "suit".

I. "Covered first-party automobile expenses" means the minimum legally mandated "automobile" personal injury protection (PIP) expenses.

J. "Coverage Terrority" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America, but only if a "claim" is made and a "suit" is brought for such "occurrence", "wrongful act", or "employee practice liability wrongful act" and "employee benefit wrongful act" in the United States of America.

K. "Dam" means any artificial barrier together with appurtenant works, which does or may impound or divert water and which is either (a) twenty five (25) feet or more in height from the natural bed of the stream or watercourse at the downstream toe of the barrier, or from the lowest elevation of the outside limit of the barrier, if it is not across a stream channel of watercourse, to the maximum possible water storage elevation; or (b) has an impounding capacity of fifty (50) acre feet or more. Any such barrier which is not in excess of twenty five (25) feet in height regardless of storage capacity, or which has a storage capacity not in excess of fifteen (15) acre feet regardless of height, shall not be considered a "dam".

L. "Employee" includes a "leased worker".

M. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

1. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

2. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

3. Unemployment insurance, social security benefits, workers' compensation and disability benefits; and

4. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies.

**N.** "Employee benefit wrongful act" means any actual or alleged negligent act, error, or omission in the "administration" of your "employee benefit program".

**O.** "Employment practice liability wrongful act" means any actual or alleged negligent error or omission resulting in loss to:

1. A person arising out of any:
   a. Refusal to employ that person;

   b. Termination of that person's employment;

   c. Employment related practices, policies, acts or omissions, including, but not limited to, coercion, demotion, evaluation, "retaliation", reassignment, discipline, defamation, harassment, failure to promote, humiliation, discrimination directed at that employee; or

   d. Acts or omissions as described in **1.c.** herein directed at a "whistle-blower"; or

2. The spouse, child, parent, brother or sister of that person as a consequence of loss to that person to whom any of the employment-related practices described in paragraphs. **1.a.**, **1.b.**, or **1.c.** is directed.

This coverage applies:

1. Whether the insured may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**P.** "First aid" means the immediate and emergency care given to an ill or injured person before regular medical aid can be obtained.

**Q.** "Hired automobile" means an "automobile" you lease, hire, rent or borrow. This does not include any "automobile" owned by you, under a long term (12 months or more) lease to you, or hired, rented, or borrowed from any of your "employees", partners, members or members of their households.

**R.** "Hostile fire" means a fire that becomes uncontrollable or breaks out from where it is intended to be.

**S.** "Insured contract" means:

1. A contract for a lease of premises including but not limited to premises rented or loaned to you;

2. A sidetrack agreement;

3. Any easement or license agreement;

4. An obligation, as required by ordinance;

5. An elevator maintenance agreement;

6. That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another party to pay for "bodily injury" or for "property damage", for a "wrongful act" from a "personal injury offense" to a third person or organization or "employment related practice wrongful act". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **6.** does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

b. That pertains to the loan, lease or rental of an "automobile" to you or

any of your "employees", if the "automobile" is loaned, leased or rented with a driver;

   **c.** That holds a person or organization engaged in the business of transporting property by "automobile" for hire harmless for your use of an "automobile" over a route or territory that person or organization is authorized to serve by public authority; or

   **d.** That indemnifies an architect, engineer, or surveyor, his agents or "employees", for injury or damage arising out of preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications or giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

**T.** "Joint powers authority(ies)" means two (2) or more public agencies joined together by a joint agreement in order to jointly exercise any power common to the contracting parties, including, but not limited to the power to create risk pooling and joint purchase of private insurance.

**U.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.

**V.** "Loading or unloading" means the handling of property:

   **1.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "automobile";

   **2.** While it is in or on an aircraft, watercraft or "automobile"; or

   **3.** While it is being moved from an aircraft, watercraft or "automobile" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "automobile".

**W.** "Municipality" means a legally incorporated or duly authorized association of inhabitants of a limited area limited to the following:  city, town, county, village, township, parish, borough, hamlet, burgh, or state, and the special districts, authorities and bureaus directly related to such entities.

**X.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**Y.** "Owned automobile" means an "automobile" you own or under long term (12 months or longer) lease to you.

**Z.** "Personal injury offense" means any act, error, or omission constituted by or arising out of one or more of the following:

   **1.** False arrest, detention or imprisonment;

   **2.** Malicious prosecution;

   **3.** Oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person or organization's goods, products, or services;

   **4.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

   **5.** Violation of an individual's person's right to privacy; or

   **6.** Assault and battery.

**AA.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

"Pollutants" does not include potable water, water distributed to the consumer intended to be potable water, agricultural water, or water furnished to commercial users, or

water used for fire suppression. "Pollutants" also does not include smoke or fumes from a "hostile fire".

**BB.** "Products-completed operations hazard":

1. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **a.** Products that are still in your physical possession; or

   **b.** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(1)** When all of the work called for in your contract has been completed;

      **(2)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

      **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2. Does not include "bodily injury" or "property damage" arising out of:

   **a.** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

   **b.** The existence of tools, uninstalled equipment or abandoned or unused materials.

**CC.** "Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured or destroyed. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**DD.** "Public entity" refers to that "municipality", governmental body, department, or unit, which is a Named Insured in the Declarations.

**EE.** "Retained limit" refers to the amount stated in the Declarations. This amount may consist of a self-insured retention, "underlying insurance", or a combination thereof. The "retained limit" will be the sum of all damages in "ultimate net loss" for:

1. "Bodily injury" or "property damage" arising out of each such "occurrence";

2. Each such "wrongful act";

3. Each such "employment practice liability wrongful act"; or

4. Each such "employee benefit wrongful act".

   In determining the "retained limit" that applies:

   **i.** All "occurrences" arising out of continuous, repeated, or related "occurrences" shall be treated as a

single "occurrence" and the "retained limit" in effect at the first occurrence shall apply.

ii. All "wrongful acts" arising out of continuous, repeated, or related "wrongful acts" shall be treated as a single "wrongful act" and the "retained limit" in effect at the time of the first "wrongful act" shall apply.

iii. All "employment practice liability wrongful acts" arising out of continuous, repeated, or related "employment practice liability wrongful acts" shall be treated as a single "employment practice liability wrongful act" and the "retained limit" in effect at the time of the first "employment practice liability wrongful act" shall apply.

iv. All "employee benefit wrongful acts" arising out of continuous, repeated, or related "employee benefit wrongful acts" shall be treated as a single "employee benefit wrongful act" and the "retained limit" in effect at the time of the first "employee benefit wrongful act" shall apply.

The "retained limit", with respect to a self-insured retention, shall include defense costs. The "retained limit", however, shall not include salaries of your "employees", your office expenses, or expenses of any claims servicing organization that you have engaged.

FF. "Retaliation" means an "employment practice liability wrongful act" of yours relating to or alleged to be in response to an employee who has:

1. Notified a superior or proper authority of any aspect of your business operation which is illegal;

2. Attempted or actually exercised any right that such "employee" has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to "employee" rights;

3. Filed a complaint with a governmental authority or a "suit" against you or any

other insured in which damages are claimed;

4. Testified against you or any other insured at a legal proceeding;

5. Declined to perform an illegal or unethical act; or

6. Exercised their right to strike against you.

GG. "Subsidence" means land or earth movement, including, but not limited to, sinking or settling of land, earthquake, earth movement, earth expansion and/or contraction, landslide, slipping, falling away, caving in, eroding, earth sinking, and earth rising or shifting or tilting.

HH. "Suit" means a civil proceeding in which damages because of "bodily injury" or "property damage", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act" to which this insurance applies are alleged. "Suit" includes:

1. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

II. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, actually paid or payable due to a "claim" or "suit" for which you are liable either by a settlement to which we agreed or a final judgment, and shall include defense costs.

JJ. "Underlying insurance" refers to any policies listed in the Schedule of Underlying Insurance and includes:

1. Any renewal or replacement of such policies;

2. Any other insurance available to the you; and

**3.** Any other valid and collectible risk financing mechanism provided under a "joint power authority".

**KK.** "Underlying insurer" means any insurer which provides any policy listed in the Schedule of Underlying Insurance and includes any insurer which provides any renewal or replacement of such policies and any insurer which provides any other primary insurance available to you.

**LL.** "Volunteer Worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**MM.** "Whistle-blower" means an "employee", who discloses or threatens to disclose to a superior or any governmental agency, or who gives testimony relating to any action by you, which may be a violation of public policy as reflected in legislation, administrative rules, regulations or decisions, judicial decisions, or professional codes of ethics.

**NN.** "Wrongful act" means:

Any actual or alleged error or misstatement, omission, negligent act, or breach of duty including misfeasance, malfeasance, and nonfeasance by you, including, but not limited to, those constituted by:

**1.** Any violation of antitrust statutes;

**2.** Any negligent ministerial act;

**3.** Any faulty preparation or approval of maps, plans, reports, surveys, designs, bid documents, bid specifications, other specifications, or inaccuracies due to estimates of probable costs, but only if any of these services are provided by any insured for another insured; or

**4.** Discrimination on any basis, including, but not limited to: race, creed, religion, ethnic background, national origin, age, handicap, sex or sexual orientation; but not intentionally committed by you or at your direction.

"Wrongful act" also means any "personal injury offense" or "advertising injury offense".

"Wrongful act" does not include "employment practice liability wrongful act" or "employee benefit wrongful act".

**OO.** "Your Product"

**1.** Means:

**a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(1)** You;

**(2)** Others trading under your name; or

**(3)** A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products;

**2.** Includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product";

**b.** The providing of or failure to provide warnings or instructions;

**PP.** "Your Work"

   **1.** Means:

      **a.** Work or operations performed by you or on your behalf; and

      **b.** Materials, parts or equipment furnished in connection with such work or operations.

   **2.** Includes:

      **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work";

      **b.** The providing of or failure to provide warnings or instructions.

**POLICY NUMBER: 71P2000037-101**

**COMMERCIAL LIABILITY UMBRELLA**
**CU 02 23 11 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

**(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

**(b)** Continuation of the policy coverage would:

**(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

**(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**CU 02 23 11 04**

© ISO Properties, Inc., 2004

**Page 1 of 2**

**(8)** A material change in limits, type or scope of coverage, or exclusions in one or more of the underlying policies.

**(9)** Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse.

**(10)** A reduction in financial rating or grade of one or more insurers, insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

   © ISO Properties, Inc.,  2004   **CU 02 23 11 04**   □

**POLICY NUMBER: 71P2000037-101**     **COMMERCIAL LIABILITY UMBRELLA**
**CU 21 30 01 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**POLICY NUMBER: 71P2000037-101**

IL 09 85 01 08

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| |
|---|
| **Terrorism Premium (Certified Acts) $    22,698**<br>**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**<br>**All coverages under this policy.**<br><br><br><br><br>**Additional information, if any, concerning the terrorism premium:**<br><br> |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© ISO Properties, Inc., 2007   ☐

**POLICY NUMBER: 71P2000037-101**                                         **IL 00 17 11 98**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**POLICY NUMBER: 71P2000037-101**

EIL 01 510 07 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLLUTION CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

Any exclusion, limitation or other provision relating to pollutants ("pollutants"), or any amendment to or replacement of such exclusions, limitations or other provisions, applies whether or not the pollutant has any function in, or is of essential, integral, necessary or significant use to, your business, operations, premises, site or location.

**POLICY NUMBER: 71P2000037-101**

**COMMERCIAL LIABILITY UMBRELLA**
**CU 21 23 02 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**I.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**II.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

**POLICY NUMBER: 71P2000037-101**

EUM 27 502 05 06

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDENDUM TO THE DECLARATIONS

This endorsement modifies insurance provided under the following:

PUBLIC ENTITIES EXCESS LIABILITY
COMMERICAL EXCESS LIABILITY COVERAGE PART

**The following items are added to the Declarations:**

**I.        INSURER CONTACT INFORMATION**

If you have questions about your insurance policy, or questions about claims relating to your insurance policy, please contact your insurer at the following:

Everest National Insurance Company
477 Martinsville Road
P. O. Box 830
Liberty Corner, NJ 07938-0830
(800) 438-4375

**II.DEFENSE WITHIN THE LIMITS NOTICE**

**NOTICE: AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**III.CLAIMS-MADE NOTICE**

**NOTICE: IF THIS POLICY OR ANY COVERAGE PROVIDED UNDER THIS POLICY IS ISSUED TO YOU ON A CLAIMS-MADE BASIS, COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST YOU WHILE THE COVERAGE IS IN FORCE.  PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

POLICY NUMBER: 71P2000037-101

EUM 20 505 05 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED- INSURED CONTRACT

This endorsement modifies insurance provided under the following:

### PUBLIC ENTITIES EXCESS LIABILITY

1. The following is added to **SECTION II. WHO IS AN INSURED:**

   Any person(s), entity(ies), or organization(s) to whom the Named Insured is obligated by virtue of an "insured contract" to provide insurance solely with respect to "bodily injury" and "property damage" and arising out of:

   a. Premises leased, used or occupied by you;

   b. "Automobiles" leased or rented by you;

   c. Equipment owned, leased, rented, maintained or used by you;

   d. Mortgagees of a Named Insured; or

   e. Property owners and property managers of property owned, leased, rented or occupied by you.

However, this insurance under this endorsement does not apply to:

   i. Any "occurrence" which takes place prior to or after you cease to occupy the premise as stated in the "insured contract".

   ii. Any structural alteration, new construction or demolition operations performed by or on behalf of the additional insured.

   iii. Any "wrongful act", "employment practices wrongful act" or any "employee benefit wrongful act".

2. The Limits of Insurance afforded under this endorsement will be limited to the Limits of Insurance required within the terms of the "insured contract" or the Limits of Insurance of this Policy, whichever is less, and will apply in excess of any "underlying insurance" or your "retained limit" shown in the Declarations. We will not be obligated for limits of insurance shown in the "insured contract" that are greater than the Limits of Insurance of this Policy.

**POLICY NUMBER: 71P2000037-101**

EUM 02 536 05 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EARLIER NOTICE OF CANCELLATION OR NONRENEWAL PROVIDED BY US

This endorsement modifies insurance provided under the following:

PUBLIC ENTITIES EXCESS LIABILITY
COMMERICAL EXCESS LIABILITY COVERAGE PART

**SCHEDULE**

| Number of Days Notice | 90 |
|---|---|

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation or nonrenewal, as provided in either the Cancellation Condition, When We Do Not Renew Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

Copyright, Everest Reinsurance Company, 2006
Includes copyrighted material of ISO Properties, Inc.,  with its permission.

**POLICY NUMBER: 71P2000037-101**

EUM 21 723 05 06

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION- TIME ELEMENT POLLUTION

This endorsement modifies insurance provided under the following:

**PUBLIC ENTITIES EXCESS LIABILITY**

Exclusion **9.** of paragraph **D. EXCLUSIONS** of **SECTION I. COVERAGES** is replaced with the following:

**9. a** Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**b.** Any loss, cost, or expense arising out of any:
  **(1)** Request, demand, order, statutory or regulatory requirement that you, or any others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or
  **(2)** "Claim" or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, in any way responding to, or assessing the effects of "pollutants", unless such loss, cost, or expense arising from any spill, release, or other hazardous condition at or from the premises, equipment, or location(s) which you do not own, rent control, or occupy.

**c.** This exclusion does not apply if said discharge, dispersal, release or escape of "pollutants" is:
  **(1)** Accidental and neither expected nor intended by you;
  **(2)** Instantaneous and was demonstrated as commencing at a specific time and date during the Policy Period;
  **(3)** Known by you within ten calendar days of date of commencement;
  **(4)** Reported in writing to us within forty calendar days of becoming known to your Risk Manager, or any of your designated Department Heads; and
  **(5)** You expend reasonable effort to terminate the discharge, dispersal, release or escape.

**d.** Nothing contained in this endorsement shall operate to provide any coverage with respect to:
  **(1)** Any site or location used by you or by another on your behalf for the handling, storage, dispersal, dumping, processing, or treatment of waste material;
  **(2)** Any fines or penalties;
  **(3)** Acid rain; or
  **(4)** Clean up, removal, containment, treatment, detoxification, or

Includes copyrighted material of ISO Properties, Inc., 2004 with its permission.

**POLICY NUMBER: 71P2000037-101**

EUM 21 723 05 06

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

neutralization of "pollutants" situated on premises you own, rent or occupy at the time of the actual discharge, dispersal, seepage, migration, release or escape of said "pollutants".

However, this exclusion shall not apply to the following:

i. Any liability arising out of heat, smoke, or fumes from a "hostile fire";

ii. Any liability arising out of explosion, lightning, windstorm, vandalism or malicious mischief, collapse, riot and civil commotion, flood, earthquake or collision, upset, or overturn of an "automobile" or equipment;

iii. Any liability arising out of police use of mace, oleoresin capsicum (o.c.), pepper gas or tear gas;

iv. Any liability arising out of weed abatement or spraying; or

v. Any liability arising out of the "products-completed operations hazard".

All liability arising from **i., ii., iii., iv.,** or **v.** above arising out of the same, interrelated, associated, repeated or continual discharge, dispersal, release or escape of "pollutants" shall be deemed one "occurrence", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act". The commencement of such discharge, dispersal, release or escape of "pollutants" shall be recorded and reported to the Risk Manager or designated Department Head within a seventy-two hour period.

Regardless of whether any "claim" or "suit" against you has been made, you shall give written notice to us or any authorized brokers within forty calendar days of the Risk Manager's or designated Department Head's recorded entry of such discharge, dispersal,

release or escape of "pollutants" which may result in liability as described in **i., ii., iii., iv.,** or **v.** above;

POLICY NUMBER: 71P2000037-101

**EUM 22 544 04 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DAM COVERAGE WITH EXCEPTION FOR SPECIFICALLY EXCLUDED DAMS; AMENDED SUBSIDENCE EXCLUSION

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY EXCESS LIABILITY

### SCHEDULE

| **Name Of Excluded Dam(s):** |
| --- |
| Lake Gregory Dam |
| Seven Oaks Dam |
| Pelican Dam |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** Exclusion **19.** in paragraph **D. EXCLUSIONS** of **SECTION I. COVERAGES** is replaced by the following:

   **19.** "Property damage" caused by, arising out of, resulting from, attributable or contributed to, or aggravated by "subsidence".

   However, this exclusion does not apply to "subsidence" arising out of the rupture, bursting, over-topping, flooding, cracking, seepage, under-seepage, accidental discharge or partial or complete structural failure of any "dam" not specifically listed in the Schedule of this endorsement.

**B.** Exclusion **21.** in paragraph **D. EXCLUSIONS** of **SECTION I. COVERAGES** is replaced by the following:

   **21.** Any liability arising out of the rupture, bursting, over-topping, flooding, cracking, seepage, under-seepage, accidental discharge or partial or complete structural failure of any "dam" listed in the Schedule of this endorsement.

**POLICY NUMBER: 71P2000037-101**                    **COMMERCIAL LIABILITY UMBRELLA**
                                                      **CU 22 40 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

| | |
|---|---|
| Effective Date of Change:      July 1, 2010 | |
| Change Endorsement No.:      N/A | |
| Named Insured: County of San Bernardino | |

The following item(s):

☐ Insured's Name                    ☐ Insured's Mailing Address

☐ Policy Number                     ☐ Company

☐ Effective/Expiration Date         ☐ Insured's Legal Status/Business of Insured

☐ Payment Plan                      ☐ Premium Determination

☐ Additional Interested Parties:    ☒ Coverage Forms and Endorsements

☐ Limits/Exposures                  ☐ Self-Insured Retention

☐ Covered Property/Located Description   ☐ Classification/Class Codes

☐ Rates                             ☐ Underlying Insurance

is (are) changed to read **{See Additional Page(s)}:**

The above amendments result in a change in the premium as follows:

☒   NO CHANGES     ☐   TO BE ADJUSTED         **ADDITIONAL PREMIUM**     **RETURN PREMIUM**
                        AT AUDIT                **$**                      **$**

| | |
|---|---|
| Endorsement Effective: July 1, 2010 | Countersigned By: |
| Named Insured: County of San Bernardino | (Authorized Representative) |

**POLICY CHANGES ENDORSEMENT DESCRIPTION**

**A.** The following paragraph is added to **D. EXCLUSIONS** of **SECTION I. COVERAGES**:

This insurance does not apply to a "claim" or "suit" against you for:

Any liability arising out of or in connection with a "strip search" or "body cavity search" of a detained person or persons. As used in this exclusion, "strip search" means a search which includes a physical or visual inspection of the underclothing, breasts, buttocks, or genitalia of the searched person. As used in this exclusion, "body cavity search" means a visual or physical inspection of the stomach, rectal cavity and/or vagina of the searched person.

This exclusion shall apply only to strip search or body cavity search activity that is alleged in a "Class Action". As used in this exclusion, "class action" means a certified class action or a lawsuit that includes class action allegation.

**B.** Paragraph **19.** of **D. EXCLUSIONS**, **SECTION I. COVERAGES**, is deleted in its entirety.

**C.** Paragraph **3.** of **SECTION II. WHO IS AN INSURED**, is replaced with the following:

Past or present "employees" of the Named Insured, whether or not compensated, including volunteers, while acting for or on your behalf;

**D.** Paragraph **4.** of **SECTION II. WHO IS AN INSURED**, is amended to include the following:

**4.**
   **d.** All Special Districts governed directly by the insured's governing board and other districts or agencies which are included in the Named Insured.

**E.** Paragraph **7.** of **SECTION III. LIMITS OF INSURANCE**, is amended to include the following:

   **e.** Subsidence Aggregate- The Aggregate Limit of this insurance is the most we will pay for all damages arising out of all subsidence claims for all named insureds.

**F.** **ITEM 3. A.** Limits of Insurance of the Declaration page is amended to include the following Aggregate Limit
   **e.** $10,000,000 Subsidence Aggregate

**G.** Definition **EE.** "Retained Limit" of **SECTION V. DEFINITIONS** is amended to include the following:

However, "retained limit" shall include allocated defense costs incurred in the investigation, defense or appeal of a "claim" or "suit" to which this insurance applies by attorneys who are your employees.

POLICY NUMBER:     71P2000037-101                     **COMMERCIAL LIABILITY UMBRELLA**
                                                        **CU 22 40 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

| | |
|---|---|
| Effective Date of Change: | July 1, 2010 |
| Change Endorsement No.: | 1 |
| Named Insured: | County of San Bernardino |

The following item(s):

| | |
|---|---|
| ☐ Insured's Name | ☐ Insured's Mailing Address |
| ☐ Policy Number | ☐ Company |
| ☐ Effective/Expiration Date | ☐ Insured's Legal Status/Business of Insured |
| ☐ Payment Plan | ☐ Premium Determination |
| ☐ Additional Interested Parties: | ☒ Coverage Forms and Endorsements |
| ☐ Limits/Exposures | ☐ Self-Insured Retention |
| ☐ Covered Property/Located Description | ☐ Classification/Class Codes |
| ☐ Rates | ☐ Underlying Insurance |

is (are) changed to read **{See Additional Page(s)}:**

The above amendments result in a change in the premium as follows:

| ☒ NO CHANGES | ☐ TO BE ADJUSTED AT AUDIT | ADDITIONAL PREMIUM $ | RETURN PREMIUM $ |
|---|---|---|---|

| | |
|---|---|
| Endorsement Effective:   July 1, 2010 | Countersigned By: |
| Named Insured:   County of San Bernardino | *[signature]* |
| | (Authorized Representative) |

**POLICY CHANGES ENDORSEMENT DESCRIPTION**

**ITEM 4.  FORMS AND ENDORSEMENTS** of the Declarations Page is hereby amended to delete the following Form in its entirety.

| Title | Number |
|---|---|
| Dam Coverage with Exception for Specifically Excluded Dam; Amended Subsidence Exclusion | EUM 22 544 04 09 |

**POLICY NUMBER: 71P2000037-101**                     **COMMERCIAL LIABILITY UMBRELLA**
                                                                          **CU 22 40 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

---

Effective Date of Change:        July 1, 2010
Change Endorsement No.:      2
Named Insured: County of San Bernardino

The following item(s):

☐ Insured's Name                          ☐ Insured's Mailing Address

☐ Policy Number                           ☐ Company

☐ Effective/Expiration Date               ☐ Insured's Legal Status/Business of Insured

☐ Payment Plan                            ☐ Premium Determination

☐ Additional Interested Parties:          ☒ Coverage Forms and Endorsements

☐ Limits/Exposures                        ☐ Self-Insured Retention

☐ Covered Property/Located Description     ☐ Classification/Class Codes

☐ Rates                                   ☐ Underlying Insurance

---

is (are) changed to read **{See Additional Page(s)}:**


The above amendments result in a change in the premium as follows:

☒    NO CHANGES     ☐    TO BE ADJUSTED        ADDITIONAL PREMIUM      RETURN PREMIUM
                            AT AUDIT                    $                          $

---

Endorsement Effective: July 1, 2010            Countersigned By:

Named Insured: County of San Bernardino             (Authorized Representative)

---

**CU 22 40 12 04**                    © ISO Properties, Inc., 2004                    **Page 1 of 2**  ☐

**POLICY CHANGES ENDORSEMENT DESCRIPTION**

B.   Paragraph **21.**  of **D. EXCLUSIONS**, **SECTION I. COVERAGES**, is deleted in its entirety as respects
to the following:

Lake Gregory Dam
Seven Oaks Dam
Pelican Dam

This policy is signed by officers of the Company shown on the Declarations page of this policy.

For:     Everest National Insurance Company

President                                                 Secretary